[No. 4644–1.   Division One.   September 25, 1978.]

PAUL RAU, *Appellant,* v. LIBERTY MUTUAL INSURANCE COMPANY, *Respondent.*

*James V. Grubb,* for appellant.

*Williams, Lanza, Kastner & Gibbs, Fred M. Zeder,* and *Joel Cunningham,* for respondent.

ANDERSEN, A.C.J.—

## FACTS OF CASE

A truck driver, who was struck by an uninsured motorist when he had briefly left his truck to inquire about directions, appeals from a summary judgment determining that he was not covered by the uninsured motorist endorsement of the insurance policy on the truck.

Paul Rau was employed as a truck driver by Superior Fast Freight Company. Superior was in the local cartage and freight forwarding business and its trucks were covered by an automobile insurance policy issued by Liberty Mutual Insurance Company. The policy contained an uninsured motorist endorsement.

On the date of the accident with which this case is concerned, the driver parked the truck at the curb of the southbound lanes of Fourth Avenue South in Seattle, near its intersection with Lucille Street. He left the truck and crossed all four lanes of Fourth Avenue South on foot to ask directions from another truck driver, also employed by Superior. In returning to his truck, he was struck by an uninsured motorist. The impact occurred in a northbound lane of Fourth Avenue South, some 20 feet from where the truck he had been driving was parked.

One issue is presented.

## Issue

Was the truck driver covered by the uninsured motorist endorsement on the vehicle he had been driving when, while returning to his vehicle after inquiring as to directions about where to make a delivery, he was struck by an uninsured motorist?

## Decision

CONCLUSION. Under the undisputed facts presented, the driver was "using" the truck at the time of the accident and was therefore an insured under the uninsured motorist endorsement.

The trial court granted the insurance company's motion for summary judgment on the ground that at the time of the accident the driver was not an insured under the uninsured motorist endorsement of the policy it wrote on the truck.

■ Our approach to this case has been mandated by the legislature, our State Supreme Court and by prior decisions of this court. The provisions of the uninsured motorist statute are to be liberally construed to the end that innocent victims will be protected from irresponsible drivers. RCW 48.22.030; *Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 333–35, 494 P.2d 479 (1972); *Signal Ins. Co. v. Walden,* 10 Wn. App. 350, 353, 517 P.2d 611 (1973).

The driver was not one of the insureds named on the policy. We must therefore look to the other categories of persons who are insured under the policy.

In that connection, the public policy regarding uninsured motorist coverage as set forth in RCW 48.22.030[1] controls over the express terms of the insurance contract. It is settled in this state that

the statutory policy of RCW 48.22.030 vitiates any attempt to make the meaning of insured for purposes of

---

[1] "On and after January 1, 1968, no new policy or renewal of an existing policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect

uninsured motorist coverage narrower than the meaning of that term under the primary liability section of the policy. *Federated Am. Ins. Co. v. Raynes,* 88 Wn.2d 439, 443, 563 P.2d 815 (1977). *Accord, Touchette v. Northwestern Mut. Ins. Co., supra* at 334–35. Thus parties to an insurance contract may agree to a narrow definition of persons insured so long as the definition is applied consistently throughout the policy. But once it is determined that a person is insured under the liability section of the policy, that person is also entitled to be considered as an insured under the uninsured motorist endorsement of the policy. *Federated Am. Ins. Co. v. Raynes, supra.*

Turning first to the liability section of the policy, the definition of "insured" pertaining to the driver, covers him while *using* the truck with Superior's permission.[2] In this connection, it should be noted that although the liability

---

to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in RCW 46.29.490, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit–and–run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom, except that the named insured may be given the right to reject such coverage, and except that, unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer." RCW 48.22.030.

[2]This provision of the policy reads:
    II. PERSONS INSURED
        Each of the following is an insured under this insurance to the extent set forth below:
        . . .
    (c) any other person *while using* an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other *actual use* thereof . . .
(Italics ours.) The terms "while using" and "actual use" are generally considered synonymous, *Metcalf v. Hartford Accident & Indem. Co.,* 176 Neb. 468, 126 N.W.2d 471, 474 (1964); *Williams v. United Servs. Auto. Ass'n,* 250 F. Supp. 502, 504 (N.D. Miss 1965), *rev'd on other grounds, Maryland Cas. Co. v. Williams,* 377 F.2d 389 (5th Cir. 1967). For clarity, therefore, only the word "using" is referred to herein.

section of the policy excludes from bodily injury coverage any losses to employees which are covered by workmen's compensation (as the driver's injury was), such workmen's compensation exclusions pertain only to the liability *risks* which are insured against in the liability section of the policy. Workmen's compensation exclusions in the liability section of the policy do not relate to who an *insured* is— and *Touchette* and *Federated American* instruct us that the "meaning of insured" is the pertinent inquiry.[3]

Turning then to the uninsured motorist endorsement of the policy, the definition of "insured" pertaining to the driver covers him while *occupying* the truck and, in that context, "occupying" is defined as meaning "*in or upon or entering into or alighting from*" such vehicle.[4]

---

[3]Coverage A—Bodily Injury Liability and Coverage B—Property Damage Liability of the policy contain the following:
Exclusions
This insurance does not apply:
. . .
(b) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;
(c) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury; but this exclusion does not apply to any such injury arising out of and in the course of domestic employment by the insured unless benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;
. . .
It is to be further noted that the uninsured motorist endorsement itself contains provisions relating to workmen's compensation. Those provisions are not pertinent to the discussion at hand, however, since by their terms they deal only with matters of set–off and subrogation.

[4]The uninsured motorist endorsement sets out three groups of persons who are insured under varying conditions by this coverage:
"II. PERSONS INSURED
"Each of the following is an insured under this insurance to the extent set forth below:

Thus it is, that according to the policy as written, the driver was an insured under the liability section of the insurance policy while he was "using" the vehicle, but he was an insured under the uninsured motorist endorsement of the policy only when he was "in or upon or entering into or alighting from" the vehicle. To the extent that the uninsured motorist endorsement purported to narrow the definition of insured to cover the driver only when he was "in or upon or entering into or alighting from" the truck, that effort was invalid. *Touchette v. Northwestern Mut. Ins. Co., supra; Federated Am. Ins. Co. v. Raynes, supra.*

▇ At the time of his injury, the driver had the insured truck out with the permission of the owner, his employer. In determining whether the driver was covered by the uninsured motorist endorsement at the time of his injury, the critical inquiry therefore becomes whether he was "using" the truck at the time he was struck by the uninsured motorist. If he was using the truck at the time, he is insured under the endorsement.

Although the uninsured motorist endorsement in this case does not contain the words "use" or "using,"[5] it is of interest to note that these words are deemed contained in such endorsements by force of statute and judicial construction in several states, as we similarly deem them

---

"(a) the named insured and any designated insured and, while residents of the same household, the spouse and relatives of either;

"(b) *any other person while occupying an insured highway vehicle;* and

"(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an Insured under (a) or (b) above.

"The insurance applies separately with respect to each Insured, except with respect to the limits of the company's liability." (Italics ours.) The term "occupying" used in "(b)" just above is then defined in the endorsement as follows:

"*'occupying' means in or upon or entering into or alighting from;*" (Italics ours.)

[5]The provisions of the uninsured motorist endorsement in issue in the policy before us (see footnote 4) are from the "1966 Standard Form" uninsured motorist endorsement promulgated by the National Bureau of Casualty Underwriters.

included in the endorsement in this case. We are therefore able to refer to those decisions to assist in determining what constitutes "using" a vehicle within the contemplation of the uninsured motorist endorsement in the case before us.

In point is the recent decision in *Hartford Accident & Indem. Co. v. Booker,* 140 Ga. App. 3, 230 S.E.2d 70 (1976). *Booker* involved a sanitation worker who was injured while he was near his truck but not physically touching it. There the court discussed what it means to "use" a vehicle within the contemplation of an uninsured motorist endorsement:

> Since use of a vehicle determines who is insured for purposes of the [uninsured motorist] statute, the definition of the word "use" becomes a central issue in this case. In Federated Mut. Implement & Hardware Ins. Co. v. Gupton, 241 F.Supp. 509, 511 (E.D.S.C., 1965), an action identical to the instant case in all material respects, the court said: "Exact definition of the term 'use' is elusive and is not capable of a definition which will leave everyone 'comfortable.' Whether or not an injury arose from the 'use' of a motor vehicle within the contemplation of a liability policy or statute depends upon the factual context of each case. In this setting the term does not imply 'remoteness,' but does extend beyond actual physical contact. And it would seem to extend at least to the point, beyond physical contact, where control over the instrumentality is easily or reasonably at hand, and particularly when it is still being 'utilized.'"

*Hartford Accident & Indem. Co. v. Booker, supra* at 4–5.

*Booker* held that there was coverage under the uninsured motorist endorsement for the truck driver who was struck by an uninsured motorist while he was picking up garbage some 30 feet from the garbage truck. In ruling for the driver, the court stated:

> In defining the word "use" of the garbage truck, we must look to the contemplation of the parties in entering into the insurance contract. It is clear from the insurance contract that this vehicle was to be used in the business of "Sanitary Pick Up," and that this included "Garbage

Ashes or Refuse Collecting including completed operations." Common sense tells us that the parties certainly contemplated that the garbage truck would be loaded and unloaded and that the garbage to be loaded on said truck would be hauled to the truck by a garbage collection container and that, in many instances, it would be necessary for the driver to walk down the side of the road near his truck in order to collect the garbage.

*Hartford Accident & Indem. Co. v. Booker, supra* at 7.

The case of *Federated Mut. Implement & Hardware Ins. Co. v. Gupton,* 241 F. Supp. 509 (E.D.S.C. 1965), cited with approval in the above excerpt quoted from *Booker,* was appealed to the fourth circuit. In affirming, the fourth circuit agreed that a service station employee who drove a service station truck out to deliver gasoline to a stalled automobile was "using" the insured truck within the purview of the uninsured motorist endorsement when the disabled automobile being driven by the uninsured motorist suddenly backed up and struck him as he was putting gas into it. *Federated Mut. Implement & Hardware Ins. Co. v. Gupton,* 357 F.2d 155 (4th Cir. 1966).

A closely analogous case is *Owens v. Ocean Accident & Guar. Corp.,* 194 Ark. 817, 109 S.W.2d 928 (1937). Although *Owens* dealt with liability coverage rather than uninsured motorist coverage, it is pertinent in that at issue was whether an injury arose out of the *use* of an ambulance. The injury to the patient, who fell off the ambulance stretcher some distance from the ambulance, was held to be covered by the policy on the ambulance. There the court noted that

it is not a perversion or extension of the contract, when applied to the instant case, to say that, although use of the stretcher to convey [the patient] from her home to the waiting ambulance was not a necessary incident to use of the automobile as a motor vehicle, it was an essential transaction in connection with use of the automobile as an ambulance.

*Owens v. Ocean Accident & Guar. Corp., supra* at 822.

As illustrative of situations where it has been determined that there was no *use* of the automobile, and hence no uninsured motorist coverage, is *Insurance Co. of N. America v. Perry,* 204 Va. 833, 134 S.E.2d 418 (1964). There a police officer who had left his police car and was 164 feet away from the parked car and engaged in the act of serving a warrant when he was struck by an uninsured motorist was held not to be covered by the endorsement. The gist of that opinion is that at the time the officer was struck he was no longer vehicle oriented but had become highway or sidewalk oriented.

In summary, whether a person can be considered as "using" a motor vehicle and thus an insured under an uninsured motorist endorsement depends on the factual context of each case provided, however, that at least the following four criteria are met as of the time of the injury: (1) there must be a causal relation or connection between the injury and the use of the insured vehicle (*see Federated Mut. Implement & Hardware Ins. Co. v. Gupton,* 357 F.2d 155, 157 (4th Cir. 1966); 12 R. Anderson, *Couch Cyclopedia of Insurance Law* § 45:56 (2d ed. 1964); Annot., 89 A.L.R.2d 150, 154 (1963)); (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it; (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

In the present case, the driver satisfied the necessary criteria. He was employed as a truck driver by a motor carrier which insured the truck he was driving as a commercial vehicle. He was out making deliveries with the vehicle with the owner's permission. Common sense tells us, as it did the court which considered a similar event in *Booker,* that the parties contemplated the driver of a delivery truck on his route might well be expected to have to occasionally leave the truck briefly to ask directions. The driver had left the truck to seek directions as to where to make a delivery, and

was returning to his truck and was 20 feet from it at the time he was struck by the uninsured motorist.

In this case, the facts determinative of the coverage issue are undisputed. We can therefore decide that issue as a matter of law on appeal. *Baker v. Yakima Valley Canal Co.*, 77 Wash 70, 75, 137 P. 342 (1913); CR 56. For the reasons discussed, we hold that the truck driver was "using" the insured truck at the time he was injured and that he was therefore covered by the uninsured motorist endorsement of the truck policy as an insured thereunder.

■ Although it is appropriate for the courts to determine the question of coverage, as we have done, the remaining issues of liability, injuries and damages are issues to be decided by arbitration. *Hartford Accident & Indem. Co. v. Novak*, 83 Wn.2d 576, 586, 520 P.2d 1368 (1974).

The judgment of the trial court granting Liberty Mutual Insurance Company's motion for summary judgment is reversed. The cause is remanded to the trial court with directions to enter a judgment ordering Liberty Mutual to extend uninsured motorist coverage to Mr. Rau and to arbitrate his claim in accordance with the provisions of the uninsured motorist endorsement.

WILLIAMS and CALLOW, JJ., concur.