Rebecca SWARNER, Appellant

v.

MUTUAL BENEFIT GROUP d/b/a Mutual Benefit Insurance Co., Appellee.

Superior Court of Pennsylvania.

Argued Jan. 15, 2013.

Filed July 18, 2013.

Reargument Denied Sept. 16, 2013.

---

Matthew S. Crosby, Harrisburg, for appellant.

James M. Horne, State College, for appellee.

BEFORE: BOWES, GANTMAN, and OLSON, JJ.

OPINION BY BOWES, J.:

Rebecca Swarner commenced this declaratory judgment action against her automobile insurance carrier, Mutual Benefit Group d/b/a/ Mutual Benefit Insurance Co. ("Mutual Benefit") to determine whether the household exclusion was applicable on largely stipulated facts to preclude underinsured motorists ("UIM") benefits under that policy. Following discovery, both parties filed motions for summary judgment. The trial court granted summary judgment in favor of Mutual Benefit based on the household exclusion. After careful review, we find the exclusion inapplicable on the facts before us and we reverse and remand for entry of summary judgment in favor of Ms. Swarner.

On September 6, 2008, Ms. Swarner was a passenger on a motorcycle owned and operated by her husband, Jason. They were preparing to access the on-ramp to Route 22 eastbound in Fermanagh Township, Juniata County, when a Dodge pickup truck driven by Joshua Bender and traveling in the opposite direction made a left-hand turn onto the ramp in the path of motorcycle. Stipulation of Facts, ¶ 3. The motorcycle struck the right front of the truck, and the Swarners were ejected. Mr. Swarner came to rest on the road in close proximity to the motorcycle and was pronounced dead upon arrival at Lewistown Hospital. *Id.* at ¶ 6. Mrs. Swarner became airborne and landed in the travel lane of S.R. 35, where she was subsequently run over by Philip Howie, who was operating a 2000 Dodge pick-up truck. *Id.* at ¶ 5.

The Swarners were married at the time of the accident, resided in the same household, and were named insureds under a Mutual Benefit insurance policy which covered two automobiles and a truck and provided UIM coverage of $100,000/$300,000, which could be stacked. *Id.* at ¶¶ 6, 7, 8, 9, 10. The motorcycle was owned by Mr. Swarner and insured under a policy issued by Progressive Insurance Company. *Id.* at ¶ 14.

Both Mr. Bender and Mr. Howie were insured by Erie Insurance Company, and each tendered his liability limits of $100,000. *Id.* at ¶ 16. Progressive, the insurer of the decedent's motorcycle, tendered its UIM limits of $25,000. *Id.* at ¶ 17. All settlements were consented to by Mutual Benefit. According to Ms. Swarner, she sought UIM benefits under her policy with Mutual Benefit as these sums were inadequate to fully compensate her for the serious injuries she sustained.

Mutual Benefit denied benefits pursuant to the policy's household exclusion, often referred to as the family-car exclusion, for injuries sustained while occupying an owned motor vehicle that was not insured under its policy. *Id.* at ¶ 19.

Ms. Swarner commenced this action on July 28, 2010, seeking a declaration that the household exclusion was inapplicable as she was not occupying the motorcycle when Mr. Howie ran her over. Mutual Benefit filed an answer to the complaint and the parties proceeded with discovery. At the conclusion of discovery, the insurer filed a motion for summary judgment alleging that its policy's household exclusion operated to exclude underinsured motorists coverage when the insured sustains bodily injury while occupying a vehicle owned by her or her spouse that is not insured under the policy issued by Mutual Benefit. Motion for Summary Judgment, ¶ 20. Ms. Swarner filed a cross-motion for summary judgment. The trial court granted summary judgment for the insurer, holding, as a matter of law, that under our High Court's decision in *Utica Mutual Insurance Co. v. Contrisciane,* 504 Pa. 328, 473 A.2d 1005 (1984), Ms. Swarner was occupying the motorcycle at the time of the accident, and that the household exclusion was applicable to bar UIM recovery.

Ms. Swarner timely appealed and presents the following issues for our review:

I. Whether the trial court erred in finding as a matter of law that Plaintiff/Appellant was occupying a vehicle not covered by her Mutual Benefit Group Insurance policy at the time of the incident?

    a. Whether the trial court erred in failing to apply the plain meaning of the clear and unambiguous language of Plaintiff/Appellant's automobile insurance contract with Defendant/Appellee?

    b. Whether a proper application of the *Utica Mutual* test for "occupying" clearly demonstrates that Plaintiff/Appellant was not occupying her husband's motorcycle at the time of the second collision?

Appellant's brief at 7.

■ Herein, the Declaratory Judgment Act has been invoked to interpret the obligations of the parties under an insurance contract. "The proper construction of an insurance policy is resolved as a matter of law to be decided by the court in a declaratory judgment action." *Allstate Fire and Cas. Ins. Co. v. Hymes,* 29 A.3d 1169, 1171 (Pa.Super.2011). Hence, as with all issues of law, our review is *de novo.* "Our standard of review in a declaratory judgment action is narrow. We review the decision of the trial court as we would a decree in equity and set aside factual conclusions only where they are not supported by adequate evidence. We give plenary review, however, to the trial court's legal conclusions." *Butler v. Charles Powers Estate,* 29 A.3d 35, 39 (Pa.Super.2011) *(rev'd on other grounds, Butler v. Charles Powers Estate ex rel. Warren,* 65 A.3d 885 (Pa.2013)). We are limited to determining whether the trial court clearly abused its discretion or committed an error of law. *Id.*

■ Insurance policies are contracts, and in reviewing the trial court's determination, we are mindful of the following principles. In interpreting a contract, the court must ascertain the intent of the parties. *State Farm Fire & Cas. Co. v. DeCoster,* 2013 PA Super 121, 67 A.3d 40. Such intent is to be inferred from the written provisions of the contract. Where the contract language is clear and unambiguous, we are required to give effect to that language unless it violates a clearly expressed public policy. *Adamitis v. Erie*

*Ins. Exch.,* 54 A.3d 371, 375–376 (Pa.Super.2012). We have been reluctant to invalidate a contractual provision due to public policy concerns. *Eichelman v. Nationwide Ins. Co.,* 551 Pa. 558, 711 A.2d 1006, 1008 (1998); *Adamitis, supra* ("It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy]").

■ "Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Standard Venetian Blind Co. v. Am. Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563, 566 (1983); *Miller v. Poole,* 45 A.3d 1143, 1147 (Pa.Super.2012); *Genaeya Corp. v. Harco Nat'l Ins. Co.,* 991 A.2d 342, 345 (Pa.Super.2010); *see also Penn–America Ins. Co. v. Peccadillos, Inc.,* 27 A.3d 259, 265 (Pa.Super.2011) ("When the language of the policy is clear and unambiguous, we must give effect to that language. [However,] when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage.").

■ Policy provisions are ambiguous only when they are "reasonably susceptible of different constructions and capable of being understood in more than one sense." *Allstate Fire and Casualty Insurance Co. v. Hymes, supra* at 1172. A court cannot "torture the [policy] language" to create ambiguities where none exist. *Ryan Homes, Inc. v. Home Indem. Co.,* 436 Pa.Super. 342, 647 A.2d 939, 941 (1994). "This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Constr. Co. v. Harleysville Mut. Ins. Co.,* 557 Pa. 595, 735 A.2d 100, 106 (1999). "[C]ourts must construe the terms of an insurance policy as written and may not modify the plain meaning of the words under the guise of 'interpreting' the policy. If the terms of a policy are clear, this Court cannot rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used." *Allstate Fire and Casualty Insurance Co. v. Hymes, supra* at 1171.

■ Where, as here, a defense is based on an exception or exclusion in a policy, the burden is on the insurer to establish its application. *Donegal Mut. Ins. Co. v. Baumhammers,* 595 Pa. 147, 938 A.2d 286, 290 (2007); *Prudential Prop. & Cas. Ins. Co. v. Sartno,* 588 Pa. 205, 903 A.2d 1170 (2006). Exclusionary clauses generally are strictly construed against the insurer and in favor of the insured. *See Kropa v. Gateway Ford,* 974 A.2d 502 (Pa.Super.2009) (citing *Pecorara v. Erie Ins. Exchange,* 408 Pa.Super. 153, 596 A.2d 237 (1991); *Baumhammers, supra* (strictly construing intentional act exclusion)).

The policy at issue provides that the insurer "will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury' sustained by an 'insured' and 'caused by an accident.'" Mutual Benefit Policy, Underinsured Motorists Coverage Endorsement, at 1. The owner or operator's liability must arise out of the ownership, maintenance or use of the "underinsured motor vehicle." *Id.* Herein, there is no dispute that Ms. Swarner is an "insured" under the Mutual Benefit policy. She pled that she sustained bodily injury

caused by an underinsured motor vehicle, the Howie truck. Mutual Benefit denied coverage based upon the following exclusion:

    A. We do not provide Underinsured Motorists Coverage for "bodily injury" sustained:

        1. By you while "occupying," or when struck by, any motor vehicle you own which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

Mutual Benefit Personal Auto Policy, Underinsured Motorists Coverage Endorsement, at 1. "Occupying" is defined in the policy: "1) In; 2) Upon; or 3) Getting in, on, out or off." Mutual Benefit Personal Auto Policy, Definitions, at 1.

The question presented herein is whether the trial court erred in holding that the household exclusion is applicable and precludes Ms. Swarner's recovery of UIM benefits on the facts before us. There is no contention that the exclusion is void as against public policy. Thus, for purposes of our discussion, the household exclusion is enforceable to preclude UIM benefits if applicable on the facts herein.

Ms. Swarner argues first that she was not occupying the motorcycle as that term is defined in the policy, when she was struck by the Howie vehicle, and thus, the exclusion is inapplicable. She contends that the language of the policy is unambiguous as to what constituted "occupying," and that the trial court erred in failing to apply this clear and unambiguous language. Appellant's brief at 13. She directs us to the definition of "occupying" contained in the policy: "in; upon; or getting in, on, out or off." She concedes that she was occupying the motorcycle when it collided with the Bender vehicle, but contends that she was not occupying the motorcycle when, while lying unconscious in the roadway, she was

run over by the Howie truck. At the time of the second accident, she maintains that she was not in or upon the motorcycle, nor in the process of getting on, out, or off the motorcycle. Appellant's brief at 15. Accordingly, she argues that the insurer should not be permitted to disregard the unambiguous language of its exclusion to avoid coverage.

Mutual Benefit responds that the test for "occupying" enunciated by our Supreme Court in *Utica Mutual Ins. Co. v. Contrisciane, supra,* a case where the Supreme Court determined that a person was occupying a vehicle for purposes of **finding coverage** under a policy, is controlling herein. Under *Utica Mutual,* a person is "occupying" a vehicle, which was defined in the Utica Mutual policy as "in or upon or entering into or alighting from" the vehicle, if he or she meets four criteria:

    1. There is a causal relation or connection between the injury and the use of the insured vehicle;

    2. The person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;

    3. The person must be vehicle oriented rather than highway or sidewalk oriented at the time; and

    4. The person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Utica Mutual, supra,* 473 A.2d at 1009.

Mutual Benefit contends that the *Utica Mutual* test is satisfied: there is a but-for causal relationship between the motorcycle and Ms. Swarner's injuries; her location fifteen to twenty feet away was proximate to the motorcycle; she was still vehicle-oriented as her separation from the motorcycle was not voluntary; and finally, she was using the vehicle prior to her ejection.

Ms. Swarner counters that the *Utica Mutual* factors are not applicable when the issue involves the meaning of the word "occupying" for purposes of a policy exclusion. In support of her position, she points to *Allstate Fire and Casualty Ins. Co. v. Hymes, supra,* where, faced with determining whether the household exclusion operated to exclude UIM coverage, this Court applied the plain meaning of the words "to anyone while in, or, getting into or out of or when struck by a motor vehicle owned or leased by you or a resident relative which is not insured for [UIM] Coverage under this policy[,]" without reference to the *Utica Mutual* factors. *Id.* at 1172. In *Hymes, supra,* there was a collision in which the plaintiff was thrown from his motorcycle directly onto the windshield of the tortfeasor's car. This Court concluded that the injuries were the direct result of operation of the motorcycle while "on" it and enforced the exclusion.[1]

Ms. Swarner argues that if we follow the same literal approach used in *Hymes, supra,* we would arrive at a contrary result on the facts before us. Instantly, there were two separate and distinct accidents involving two different vehicles. Ms. Swarner was ejected from the motorcycle in the first collision; the second accident occurred when the truck struck her as she lay in the road. At the time of the second impact, she was not occupying the motorcycle. Specifically, she was not in or upon it. Likewise, she was not getting in, on, out, or off the motorcycle. She was lying on the roadway, her use of the motorcycle

having terminated and her departure from it, complete.

Since Ms. Swarner asserts that the trial court erred in applying the *Utica Mutual* factors as controlling herein, we begin our analysis with an examination of that decision. *Utica Mutual* was decided pursuant to the No–Fault Act, 40 P.S. § 1009.102 *et seq,* the predecessor statute to the Motor Vehicle Financial Responsibility Law. The issue therein was whether Mr. Contriciane was an insured under his employer's policy in order to qualify for UIM coverage. His status hinged on whether he was "occupying an insured highway vehicle." *Utica Mutual* at 1010. Thus, the issue was related to coverage, not to an exclusion from coverage.

These facts are pertinent to our analysis. Mr. Contriciane was involved in a minor accident while driving his employer's vehicle. He and the other driver were exchanging information at the side of the road when a police officer arrived on the scene. The officer directed Mr. Contriciane to retrieve his owner's card and license from the vehicle. Mr. Contriciane complied, and then returned approximately ninety-seven feet to the officer's vehicle. As he stood next to the police car, he was struck and killed by an uninsured motorist.

Our Supreme Court noted that where a contract exists without a history of bargaining over the terms, the construction of individual terms is a question of law. The Court rejected the literal approach to the word "occupying" in favor of one that focused on the causal relation between the injury and the use of the vehicle, and held

---

1. Mr. Hymes argued in the trial court "that a free-flying person does not qualify as one 'occupying' his vehicle." *Unitrin Direct Prop. & Cas. Co. v. Hymes,* 2010 Pa. Dist. & Cnty. Dec. LEXIS 476 *6 (Allegheny Co.2010). The trial court concluded that ejection was "getting out or off" the vehicle within the policy's definition of "occupying." Notably, that

court distinguished the factual situation therein from the one *infra,* concluding "[i]t is not as if our claimant was injured, for example, while lying in the road as a result of a previous collision involving his uninsured motorcycle. *See Mid–Century Ins. Co. v. Henault* [128 Wash.2d 207], 905 P.2d 379 (Wash.1995)." *Id.*

"that when a person is engaged in the lawful use of an insured vehicle, he will be considered to be 'occupying' that vehicle within the meaning of the policy, provided" he can meet four aforementioned criteria.

Since Mr. Contriciane was lawfully in possession of his employer's vehicle at the time of the accident, required by law to stop his vehicle and exchange information with the other driver, complying with the officer's direction to bring the information to the police car, and since his fiancée remained in the vehicle in anticipation of continuing their journey, he was "at all times ... engaged in transactions essential to the continued use of the vehicle." The Court continued that it was only because of statutory mandates and the police officer that he found himself physically out of contact with the vehicle and that use of the vehicle "precipitated the whole unfortunate series of events." *Id.* Thus, Mr. Contriciane was entitled to UM benefits.

The *Utica Mutual* rationale was explained further in *McGilley v. Chubb & Son, Inc.*, 369 Pa.Super. 547, 535 A.2d 1070, 1074 (1987), where the issue before this Court was who was responsible for the payment of basic loss benefits under the priority provisions of Section 204(a) of the No Fault Act. Mr. McGilley was a cab driver. He removed the keys from the ignition of his cab, turned off the dome light indicating that he was not in service, exited his cab, and walked to the cab located in front of him to ask for a cigarette. A SEPTA bus struck him just as he obtained a cigarette from the other cab driver.

Since Mr. McGilley was not driving at the time of the accident, in order for either Section 204(a)(1) or 204(a)(3) to apply, making the insurance company covering the cab responsible, he had to be "occupying" the cab at the time of the accident. If none of the preceding sections applied, then SEPTA was the applicable security under 204(a)(4) since its bus was "a motor vehicle involved in an accident resulting in injury."

We noted that we were construing a statutory term rather than a contractual term as in *Utica Mutual*. Furthermore, the Supreme Court in *Utica Mutual* believed that a liberal approach to the term "occupying" "best comported with the public policy behind the Uninsured Motorist Act, 40 P.S. § 2000, which was intended to protect 'those persons who while lawfully using the highways themselves suffer grave injuries through the use of those highways by others.'" *Id.* at n. 10. In discussing the *Utica Mutual* factors, we recognized that a number of decisions in Pennsylvania, as well as in other jurisdictions, rely on public policy considerations in giving a liberal construction to the term "occupying." We concluded, however, that policy considerations were less compelling in construing that term where the question was priority between two insurers rather than coverage. *McGilley v. Chubb & Son, Inc.*, 369 Pa.Super. 547, 535 A.2d 1070, 1075 (1987). Thus, we recognized therein that the term "occupying" could be construed differently depending upon the public policies implicated.

In our recent decision in *Bumbarger v. Peerless Indem. Ins. Co.*, 2013 PA Super 47, we reaffirmed that, in the context of UIM coverage, one of the objects of the MVFRL is to afford the injured claimant the greatest personal coverage. We relied upon *Danko v. Erie Ins. Exch.*, 428 Pa.Super. 223, 630 A.2d 1219 (1993), and *Lambert v. McClure*, 407 Pa.Super. 257, 595 A.2d 629 (1991), for the proposition that, in close or doubtful cases, legislative intent and the language of insurance policies must be interpreted to favor coverage.

Against this backdrop, Mutual Benefit asserts that the *Utica Mutual* factors, which broadly construe "occupying" to find

UIM coverage, control herein to exclude coverage. *Amicus* Pennsylvania Association for Justice disagrees and reminds us that the household exclusion, like all policy exclusions, should be strictly and narrowly construed while coverage clauses are broadly interpreted to afford the greatest possible protection. *See Eichelberger v. Warner*, 290 Pa.Super. 269, 434 A.2d 747 (1981). In support of the strict and narrow construction of policy exclusions, Ms. Swarner again directs our attention to *Hymes, supra,* where, faced with determining whether the household exclusion operated to exclude UIM coverage, this Court applied the plain language of the exclusion and did not reference the *Utica Mutual* factors.

In their *amicus curiae* brief, the Pennsylvania Defense Institute and the Pennsylvania Association of Mutual Insurance Companies emphasize the validity and enforceability of the household exclusion and the courts' recognition that it serves a legitimate purpose. *See Erie Insurance Exchange v. Baker*, 601 Pa. 355, 972 A.2d 507 (2009). They agree that *Utica Mutual* and its definition of "occupying" is controlling and insist that there is "no need" to "parse each word of the definition of occupying" in the policy. Brief of *Amicus Curiae* Pennsylvania Defense Institute and Pennsylvania Association of Mutual Insurance Companies at 7. Furthermore, they dispute the vitality of the 1981 *Eichelberger* decision for the proposition that the exclusion must be narrowly construed and argue that there is no special rule of construction for exclusionary clauses. They maintain that enforcement of the exclusion on the facts of this case is consistent with a public policy that favors the protection of insurers from the underwriting of unknown risks that the insured has not paid to insure. *Id.* at 11.

The issue herein is whether the exclusion by its terms applies on the facts before us. Ms. Swarner does not argue that the exclusion is void as against public policy. Hence, Mutual Benefit's argument herein that the household exclusion furthers a policy of protecting insurers from underwriting unknown risks does not inform our analysis. We agree with Ms. Swarner that the issue is one of construction. We agree further that it remains a rule of construction in this Commonwealth that policy exclusions are to be narrowly construed. *See Baumhammers, supra; Eichelberger, supra; Kropa, supra.* Thus, we look to the policy language and specifically, the definition of occupying, and construe the term narrowly. On similar facts, in construing the term "occupying" used in a household exclusion, other jurisdictions have refused to apply the expansive *Utica Mutual* factors.

In *Rau v. Liberty Mut. Ins. Co.*, 21 Wash.App. 326, 585 P.2d 157 (1978) (*abrogated by Butzberger v. Foster*, 151 Wash.2d 396, 89 P.3d 689 (2004) (abandoning vehicle-orientation factor in determining whether person was "using" a motor vehicle for purposes of UIM coverage)), the Supreme Court of Washington delineated the factor-based test for "occupying" in the context of finding coverage, which our High Court adopted verbatim in *Utica Mutual.* Yet, faced with the construction of the term "occupying" in the context of the household exclusion on identical facts in *Mid–Century Ins. v. Henault*, 128 Wash.2d 207, 905 P.2d 379 (1995), that court declined to apply the *Rau* factors.

Ms. Henault sustained injuries when she was struck by an uninsured/underinsured motorist as she lay in the roadway after having been involuntarily ejected from her uninsured motorcycle due to an earlier collision. Under the "owned vehicle exclusion" in her auto policy, no UIM coverage

was provided for injuries sustained "[w]hile 'occupying' an uninsured motor vehicle 'owned' or available for regular use by you ... for which insurance is not afforded under the Liability coverage of this policy." *Id.* at 381. "Occupying" was defined as "in, on, getting into or out of" a motor vehicle. *Id.*

The Supreme Court of Washington applied two rules of construction in determining the parties' intent: (1) that exclusionary clauses are to be strictly construed against the insurer, and (2) that clear policy language must be enforced as written. The court reasoned that the term was not ambiguous and that Ms. Henault, who had been lying in the roadway for an unspecified time, was not "occupying" her motorcycle when she was struck by the second vehicle. The court found no distinction in the policy language between a person who voluntarily exits a vehicle and one who does so involuntarily. It characterized its holding as "advanc[ing] the purpose behind the UIM statute, which is to broaden insurance protection for those injured in accidents involving uninsured or underinsured motorists[,]" and "consistent with the general principles of liberally construing the UIM statute in favor of coverage and construing policy exclusions against the insurer." *Id.* at 383. Despite the urging of the insurer to apply the *Rau* factors, the court expressly declined to do so.

The Supreme Court of New Hampshire arrived at the same result on virtually identical facts. In *Miller v. Amica Mut. Ins. Co.*, 156 N.H. 117, 931 A.2d 1180, 1181 (2007), the court ruled that "a reasonable person in the position of the insured would not view someone lying in the middle of the highway forty feet from his motorcycle for a period of time between thirty seconds to one and a half minutes as 'in, upon, getting in, on, out or off' that motorcycle."

In *Dunlap v. United States Auto. Ass'n*, 470 So.2d 98 (Fla.App. Dist.2 1985), a Florida District Court was persuaded that, for purposes of PIP coverage, the concept of "occupying," or "occupant," under the terms of the policy and the statute would extend and apply to one who is injured upon being struck by a motor vehicle immediately following an accidental, involuntary ejection from the vehicle. Fifteen years later, in *Schmidt v. State Farm Mut. Ins. Co.*, 750 So.2d 695, 697–98 (Fla.App. Dist.2 2000), that court distinguished *Dunlap* in a motorcycle ejection case involving an exclusion from UIM coverage for injuries sustained while occupying a vehicle not insured under the same policy. The court reasoned that an individual is "occupying" a vehicle only if injured immediately upon ejection. Since the decedent was lying in the road for thirty to ninety seconds before an uninsured motorist backed over his legs, he was not "in, upon, getting in, on, out or off" of the motorcycle. The connection with the vehicle had been severed.

■ We hold that the *Utica Mutual* factors are not controlling in construing the defined term "occupying" in the context of a policy exclusion under the MVFRL. Guided by the principles of contract interpretation, we find the policy definition of "occupying" to be unambiguous. Where the language is clear and unambiguous, a contention that Mutual Benefit does not dispute, the rules of contract construction compel us to apply the plain meaning. The plain meaning of the contract language would include the injuries sustained immediately upon ejection. This conclusion is consistent with our holding in *Hymes, supra.*

■ In accord with our directive to construe exclusions narrowly, we find it does not cover the situation herein where Ms. Swarner is lying in the roadway and

subsequently struck by an underinsured motorist. Ms. Swarner had ceased to occupy the motorcycle, *i.e.*, she was no longer "on" or in the process of "Getting in, on, out or off" within the meaning of the household exclusion when she was run over by Mr. Howie's truck. Reversal is mandated because the trial court erred in relying upon the *Utica Mutual* factors as the basis for entering summary judgment in favor of Mutual Benefit,[2] rather than the unambiguous policy language.

■ Mutual Benefit also argues that summary judgment is warranted as Ms. Swarner has failed to distinguish between the injuries sustained in the collision with the Bender pick-up truck, her impact with the roadway, and the injuries resulting when the Howie truck ran over her. The insurer suggests that it is an "impossible task[.]" We note preliminarily that Mutual Benefit did not move for summary judgment on this basis; thus, Ms. Swarner was not required to identify evidence in the record or supplement the record to establish that fact. *See* Pa.R.C.P. 1035.3(a)(2). If Mutual Benefit's motion for summary judgment had alleged that Ms. Swarner failed to produce evidence of the injuries sustained when the Howie vehicle ran over

her, she would have been compelled to offer such proof to avoid entry of summary judgment. *Devine v. Hutt,* 863 A.2d 1160 (Pa.Super.2004) (Pa.R.C.P. 1035.2 and 1035.3 impose a duty upon the non-moving party to respond to a motion for summary judgment). The insurer did not. Thus, Ms. Swarner's pleading that she sustained severe injuries as a direct result of "the subsequent striking by the second tortfeasor" suffices. Complaint, ¶ 13.

As the parties have stipulated to the relevant facts, and the issue before us is a purely legal one, we reverse the order granting summary judgment in favor of Mutual Benefit and remand to permit entry of summary judgment in favor of Ms. Swarner in this declaratory judgment action.

Order reversed. Case remanded with directions to enter summary judgment in favor for Ms. Swarner. Jurisdiction relinquished.

Judge GANTMAN Concurs in the Result.

---

2. Ms. Swarner also maintains that if we were to apply the *Utica Mutual* factors, the third and fourth prongs of the test for "occupying" are not met. While our disposition renders this issue moot, we are inclined to agree. Ms. Swarner contended that she was highway-oriented rather than vehicle-oriented when the Howie vehicle ran over her. She had lost the ability to move toward or return to the motorcycle, a circumstance that the Supreme Court in *Utica Mutual* found persuasive in determining whether a person was vehicle oriented The trial court rejected this argument, concluding that Ms. Swarner was vehicle-oriented because she did not leave the motorcycle of her own volition. Like the Supreme Court of Washington, we reject the notion that how Ms. Swarner arrived on the roadway is pertinent. We also agree with Ms.

Swarner that she was not engaged at that time in a transaction essential to the use of the vehicle. She was not changing a tire as in *Downing v. Harleysville Ins. Co.*, 412 Pa.Super. 15, 602 A.2d 871 (1992), refueling a disabled vehicle as in *Shultz v. Nationwide Ins. Co.*, 373 Pa.Super. 429, 541 A.2d 391 (1988), or responding to a police officer's request for vehicle information as in *Utica Mutual.* The trial court concluded that ejection from a motorcycle is a transaction essential to the use of motorcycle because it often occurs. We find no authority in support of that proposition. Furthermore, the court ignored the fact that the injuries Ms. Swarner received when she was subsequently run over by Mr. Howie did not occur when she was ejected.