J.A19043/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NATIONWIDE PROPERTY AND CASUALTY : INSURANCE COMPANY, : : v. : : JOHN S. SCHLICK, JON R. SCHLICK, : DENISE L. SCHLICK, AND TAMMY : BULGER, ADMINISTRATRIX OF THE : ESTATE OF MARSHALL D. CURL : : APPEAL OF: TAMMY BULGER, : ADMINISTRATRIX OF THE ESTATE OF : MARSHALL D. CURL : | IN THE SUPERIOR COURT OF PENNSYLVANIA No. 1909 WDA 2013 |

Appeal from the Judgment Entered November 22, 2013
In the Court of Common Pleas of Erie County
Civil Division No(s).: 10553-2013

BEFORE: BENDER, P.J.E., OLSON, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED DECEMBER 18, 2014**

Appellant, Tammy Bulger, administratrix of the estate of Marshall D. Curl ("decedent"), appeals from the order of the Erie County Court of Common Pleas entering summary judgment in favor of Appellee, Nationwide Property Casualty Insurance Company. Appellant asserts the trial court erred in concluding that a "criminal acts" exclusion in Appellee's homeowner's policy barred coverage for her potential claims against John S.,

---

[*] Former Justice specially assigned to the Superior Court.

Jon R., and Denise L. Schlick ("John S.," "Jon R.," and "Denise L.,"
respectively, "Schlicks," collectively).[1]  We affirm.

At the times relevant to this appeal, Appellee issued a homeowners
policy ("Policy") to Jon R., under which Jon R.'s wife, Denise L., and their
son, John S. were also insured.  On September 18, 2012, John S., shot and
killed the decedent, who was a visiting the Schlick's home.[2]  The firearm
involved in that incident belonged to Jon R.  The Commonwealth charged
John S. with, *inter alia*, involuntary manslaughter.  On February 4, 2013,
John S. pleaded guilty to that charge and was sentenced to a term of
incarceration.

Meanwhile, Appellant was appointed administratrix of the decedent's
estate and submitted a claim under the Policy.  The Schlicks also requested
coverage under the Policy if Appellant filed an action against them.

---

[1] The Schlicks, who were named as codefendants in Appellee's action for
declaratory judgment, submitted a letter advising this Court that they intend
to join in the brief filed by Appellant.  However, there is no record evidence
that the Schlicks filed a notice of appeal.

[2] In their motion for summary judgment, Appellee referred to John S. as an
adult who resided with his parents.  Appellant did not challenge that
characterization of John S.

We also note we have gleaned the above summary of the events from
the pleadings in this case.  None of the parties described the specific
relationship between the decedent and the Schlicks.

On March 4, 2013, Appellee filed a complaint for declaratory judgment against Appellant and the Schlicks. According to Appellee, all possible claims for the incident would fall under Coverage E or F of the Policy, which stated:

**COVERAGE E — PERSONAL LIABILITY**

**We** will pay damages an **insured** is legally obligated to pay due to an occurrence resulting from negligent personal acts . . . .

\* \* \*

**COVERAGE F — MEDICAL PAYMENTS TO OTHERS**

**We** will pay the necessary medical and funeral expenses incurred within three years after an accident causing **bodily injury**. . . . This coverage applies as follows:

1. to a person on the **insured location** with consent of an **insured**

Appellee's Compl., 3/4/13, ¶¶ 20, 22 (quoting Policy at G1-G2). However, Appellee asserted all potential claims were barred by the Policy's "criminal acts" exclusion, which stated:

1. Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply **to bodily injury or property damage:**

\* \* \*

b) caused by or resulting from **an act or omission which is criminal in nature** and committed by an **insured**

This exclusion 1.b) applies regardless of whether the insured is actually charged with, or convicted of a crime.

*Id.* at ¶ 23 (quoting Policy at H1) (bold in original, bold and italics added for emphasis).

Appellant filed an answer and new matter admitting "John S. Schlick engaged in negligent and reckless conduct" that constituted a crime. Appellant's Answer & New Matter, 4/15/13, at ¶ 27. Nevertheless, she asserted the Policy provided coverage. *Id.* at ¶¶ 29, 33.

The parties subsequently filed the following motions: Appellant's July 25, 2013 motion for judgment on the pleadings; Appellee's July 31st motion for summary judgment; and the Schlicks' August 12th motion for judgment on the pleadings.[3] The trial court, on November 22, 2013, granted Appellant's motion for summary judgment and denied Appellant's and the Schlicks' motions for judgment on the pleadings. In its accompanying opinion, the court concluded that the criminal acts exclusion applied to each of the Schlicks and that Appellee had no duty to indemnify or defend claims based on the shooting of the decedent. Trial Court Op., 11/22/13, at 5, 8.

Appellant filed a timely notice of appeal. The trial court did not order the filing of a Pa.R.A.P. 1925(b) statement.

Appellant presents the following questions on appeal:

> Whether the accidental shooting of [the decedent] by John S. Schlick constituted an occurrence as defined by [Appellee's] Homeowner's Policy?

---

[3] The Schlicks filed their answer to the complaint on July 29, 2013, denying Appellee's claim that no coverage was due.

> Whether the crimes to which John S. Schlick pled guilty fall within the criminal acts exclusion of [Appellee's] Homeowner's Policy?
>
> Whether the criminal acts exclusion of [Appellee's] Homeowner's Policy bars coverage under the policy of Jon R. Schlick and Denise L. Schlick?

Appellant's Brief at 5.[4]

Our review of an order granting a motion for summary judgment is as follows.

> We view the record[5] in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is

---

[4] In the trial court, Appellant also argued that Appellee's declaratory judgment action was "premature" because she had yet to file a complaint against the Schlicks. **See** Appellant's Answer & New Matter at ¶ 38. In this Court, Appellant has not argued that the present action was premature or that the trial court erred in failing to consider whether Appellee had a duty to defend.

[5] Pennsylvania Rule of Civil Procedure 1035.2 permits a party to move for summary judgment "[a]fter relevant pleadings are closed " and "whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report[.]" Pa.R.C.P. 1035.2(1).

Because Appellee filed its motion for summary judgment after the close of pleadings, but before the taking of discovery, the record before this Court consists of the pleadings only. **See** Pa.R.C.P. 1035.1 (defining "record" for purposes of summary judgment as including any pleadings, depositions, answers to interrogatories, admissions, and affidavits, and signed expert reports).

plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

**State Farm Fire & Cas. Co. v. DeCoster**, 67 A.3d 40, 45 (Pa. Super. 2013) (citation omitted).

> [T]he interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court. The interpretation of an insurance contract is a question of law, our standard of review is *de novo*, thus, we need not defer to the findings of the lower tribunals. . . . Our purpose in interpreting insurance contracts is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy. When the language of the policy is clear and unambiguous, we must give effect to that language. However, when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contracts prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage.

**Donegal Mut. Ins. Co. v Baumhammers**, 938 A.2d 286, 290-91 (Pa. 2007) (citations and quotation marks omitted).

"Words of 'common usage' in an insurance policy are to be construed in their natural, plain, and ordinary sense, and a court may inform its understanding of these terms by considering their dictionary definitions." **Allstate Fire & Cas. Ins. Co. v. Hymes**, 29 A.3d 1169, 1172 (Pa. Super. 2011). "[C]ontractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." **Spece v. Erie Ins. Group**, 850 A.2d 679, 682 (Pa. Super. 2004) (citation omitted). However, "[a] court cannot torture the [policy] language to create

ambiguities where none exist." ***Swarner v. Mut. Benefit Group***, 72 A.3d 641, 645 (Pa. Super. 2013) (citations and quotation marks omitted), *appeal denied*, 85 A.3d 484 (Pa. 2013).

"Exclusionary clauses generally are strictly construed against the insurer and in favor of the insured." ***Id.*** "[A]n exclusion from liability must be clear and exact in order to be given effect." ***Prudential Prop. & Cas. Ins. Co. v. Sartno***, 903 A.2d 1170, 1177 (Pa. 2006). The insurer bears the burden of establishing an exclusion applies. ***Spece***, 850 A.2d at 682.

In the instant case, there is no dispute in this appeal that John S., Jon R., and Denise L. were insured under the Policy.[6] Additionally, the decedent's death constituted "bodily injury" that occurred on the covered premises within the meaning of the Policy. ***See*** Policy at G1. We also presume the decedent was on the premises with the consent of the Schlicks.

Appellant first argues the shooting of the decedent constituted an accident or occurrence under the Policy. Appellee does not dispute this contention, but asserts that even if coverage was triggered by an accident or occurrence, the criminal acts exclusion barred recovery under the Policy. Accordingly, we will presume, without deciding, that the events leading to the decedent's death constituted an accident or occurrence triggering the possibility of coverage.

---

[6] The Policy stated "INSURED" means "**you** [the named insured, Jon R. Schlick] and the following persons if residents of **your** household at the residence premises: . . . a) **your** relatives[.]" Policy at G1.

Appellant next argues John S.'s actions did not trigger the criminal acts exception. She acknowledges the Policy bars coverage for bodily injury "caused by or resulting from an act or omission which is criminal in nature and committed by an insured." **See** Policy at H1. Nevertheless, she suggests the phrase, "an act . . . which is criminal in nature," only applies to intentional acts. In support, she asks this Court to adopt the reasoning and policy considerations in **Swift v. Fitchburg Mut. Ins. Co.**, 700 N.E.2d 288 (Mass. App. Ct., 1998), and **Tower Ins. Co. v. Judge**, 840 F.Supp. 679 (D. Minn. 1993). No relief is due.

Instantly, the criminal acts exclusion employs the phrase "an act. . . which is criminal in nature." Webster's Dictionary defines "criminal" as:

> **1** : relating to, involving, or being a crime . . . **2** : relating to crime or to the prosecution of crime . . . **3** : guilty of a crime; *also* : of or befitting a criminal . . . **4.** DISGRACEFUL[.]"

Webster's Ninth New Collegiate Dictionary (1987) at 307. Under the Policy, the nature of the act triggering the exclusion is not otherwise qualified. Additionally, the Policy contained a separate intentional acts exclusion, which bars coverage for bodily injury "by an act intending to cause harm done by or at the direction of any insured."[7] Policy at H1.

Following our review, we discern no support in the language of the exclusion or the Policy for Appellant's contention that an "act . . . which is

---

[7] The intentional acts exclusion was listed on the same page of the Policy, immediately before the criminal acts exclusion.

criminal in nature" should be limited to acts intending to cause harm. The phrase "an act . . . which is criminal in nature" is sufficiently clear on its face. Under the circumstances of this case—*i.e.*, where John S. admitted he caused the decedent's death by "recklessly"[8] pointing a loaded firearm at the decedent and having the firearm discharge—we conclude John S.'s acts were criminal in nature, even if he did not intend to cause bodily injury. Moreover, because we agree with the trial court that the language of the exclusion is unambiguous, we discern no basis to read ambiguity into the Policy by relying on the foreign law cited by Appellant. *See Swarner*, 72 A.3d at 645. Thus, we detect no error in the trial court's determination that the criminal acts exclusion barred coverage for John S.

Appellant, in her third argument, asserts the trial court erred in concluding that Appellee's policy excluded coverage for John S.'s parents, Jon R. and Denise L. In support, Appellant suggests the term "an insured,"

---

[8] "Recklessly," for the purposes of involuntary manslaughter, is defined as follows:

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

*Commonwealth v. Huggins*, 839 A.2d 862, 868-69 (Pa. 2003) (quoting 18 Pa.C.S. § 302).

as used in the criminal acts exclusion, is ambiguous because Appellee more clearly excluded coverage for "all insureds" in other sections of the Policy.[9] She thus argues the criminal acts exclusion does not clearly exclude coverage for Jon R. and Denise L. based on their son's acts.

Appellee responds that the criminal acts exclusion is clear and bars coverage for Jon R. and Denise L. Appellee emphasizes that the exclusion is triggered by an act committed by "an insured." It observes that the use of the article "an" has been construed by this Court as permitting joint application of an exclusion to "any" insured. Thus, Appellee argues, the term "an insured" creates a joint insurable interest, such that the acts of a culpable co-insured bars coverage for innocent co-insureds.

"A(n)" is an indefinite article "used as a function word before a singular noun when the referent is unspecified <*a* man overboard> . . . ." Webster's Ninth New Collegiate Dictionary at 43. In common usage, it is also synonymous with "any," the latter of which means "one or some indiscriminately of whatever kind." *Id.* at 43, 93. The plain meaning of "an insured" is not restricted to a single, definite individual, but rather one or more of a set.

---

[9] For example, the Policy contains a separate exclusion for coverage from "perils insured against" that states: "Intentional Acts, meaning loss resulting from an act committed by or at the direction of an insured that may reasonably be expected to result from such acts, or is the intended result from such acts. Intentional acts include criminal acts. Such acts exclude coverage for all **insureds**." Policy at D1.

Decisional law supports Appellee's position that the use of the indefinite article "an" and the adjective "any" are interchangeable and create joint obligations under an exclusion. *See McAllister v. Millville Mut. Ins. Co.*, 640 A.2d 1283, 1289 (Pa. Super. 1994) (holding innocent co-insured barred from recovery under fire insurance by intentional act, *i.e.* arson, of another co-insured where policy excluded coverage for loss resulting from neglect by "any insured" or intentional acts of "an insured"); *see generally Allen*, 708 A.2d at 833 (discussing non-Pennsylvania cases regarding uses of "an" or "any," but finding use of "the insured" in insurance policy's exclusion did not bar innocent co-insured from seeking coverage where the culpable co-insured intentionally abused children). *But see Allen*, 708 A.2d at 832 (noting use of "an insured" is "less clear" when creating joint obligations than terms such as "any insured.")

Although we agree with Appellant that the Policy contains language that more clearly expresses that an exclusion will apply jointly to all co-insureds, our case law and the language of the exclusion here support the trial court's legal determination that Jon R. and Denise L. are not covered for the harms caused by John S.'s criminal act. Accordingly, Appellant has not demonstrated that the trial court erred in its interpretation that Jon R. and Denise L. were not entitled to coverage under the Policy.

Judgment affirmed.

President Judge Emeritus Bender joins the memorandum.

Judge Olson concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/2014