J-A24044-14

2014 PA Super 276

| | |
|---|---|
| MICHAEL PETERS AND MALINDA PETERS, H/W AND ROBERT WESTON, AS GUARDIAN OF JADEN PETERS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| NATIONAL INTERSTATE INSURANCE COMPANY AND EVANS DELIVERY COMPANY, INC., | |
| Appellants | No. 445 EDA 2014 |

Appeal from the Order Entered September 10, 2013
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: August Term, 2011, No. 3268

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

OPINION BY PLATT, J.:                    **FILED DECEMBER 16, 2014**

Appellants, National Interstate Insurance Company, and Evans

Delivery Company, Inc., appeal from the order declaring that Appellees,

Michael Peters and Melinda Peters, husband and wife, and Robert Weston,

guardian of Jaden Peters (the Peters' minor daughter), Ohio residents, could

make a claim against National Interstate for under-insured motorist benefits

(UIM) pursuant to the Pennsylvania Motor Vehicle Financial Responsibility

_____

[*] Retired Senior Judge assigned to the Superior Court.

Law (MVFRL)[1] for an accident in Ohio.[2]   Appellees have no legally enforceable claim for UIM under Pennsylvania law.  Accordingly, we vacate the order, reverse the trial court's determination of coverage, and remand.

There is no significant dispute about the underlying history of the case. The parties entered into a joint stipulation of facts.  (**See** Joint Stipulations at Certified Docket Entry No. 47; Memorandum Opinion, 9/10/13, at 2-7; R.R. at R-148a-R-158a).  We summarize the facts most relevant to our analysis.

The accident occurred in Kent County, Ohio, on August 21, 2009. (**See** Joint Stipulation of Facts [Stipulation], ¶ 3).  Both Michael Peters, the driver, and his minor daughter, Jaden, who was traveling with him as a passenger, were seriously injured in the accident.[3]  At the time of the

---

[1] 75 Pa.C.S.A. §§ 1701— 1799.7.

[2] Appellants purport to appeal from the order of December 23, 2013, denying their post-trial motion.  A party must file post-trial motions to preserve claims the party wishes to raise on appeal. **See Motorists Mut. Ins. Co. v. Pinkerton**, 830 A.2d 958, 964 (Pa. 2003) (citing, *inter alia*, **Chalkey v. Roush**, 805 A.2d 491 (Pa. 2002), and Pa.R.C.P. 227.1). However, an appeal after disposition of the required post-trial motion is properly taken from the order of declaratory judgment, which is the final order.  **See** 42 Pa.C.S.A. § 7532 ("[S]uch declarations shall have the force and effect of a final judgment or decree.").  We have amended the caption accordingly.

[3] Their underlying complaint alleges that Michael Peters suffered multiple fractures (foot, leg, hip, ribs) and paralysis of his left leg, incurring medical/ hospital expenses of approximately $700,000.00.  Daughter Jaden, then six years old, (d/o/b 10/13/02), suffered facial fractures and blindness in her
*(Footnote Continued Next Page)*

accident Michael Peters, an Ohio resident, was employed as a truck driver by Evans Delivery, a Pennsylvania corporation. National Interstate issued a commercial vehicle policy to Evans Delivery in Pennsylvania.

The truck Michael Peters was driving was registered in Ohio and not principally garaged in Pennsylvania. (*See id.* at ¶ 5). The other driver, Matthew Knecht, hit the Peters' vehicle head-on. Knecht had insufficient insurance coverage to satisfy the Peters' entire damages claim. Knecht's insurer paid the policy limits of $200,000.00. The parties here stipulated that the Peters' damages substantially exceed $200,000.00. (*See id.* at ¶ 18, ¶ 19).

Appellees made a UIM claim pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL)[4] against National Interstate under the Evans Delivery commercial vehicle policy.[5] (*See* First Amended Action for Declaratory Judgment, ¶ 33, ¶ 40). National Interstate refused coverage. (*See* Stipulation ¶ 21; First Amended Action for Declaratory Judgment, ¶ 34). Appellees brought the underlying complaint, seeking a declaratory judgment of coverage. They alleged that the form signed by

*(Footnote Continued)* ―――――――――――――

right eye, incurring medical/ hospital expenses of $68,000.00. (*See* Complaint, at 7-8, §§ 28-29, at R.R. 103a-104a; *see also id.* at 4 §6, at R.R. 100a).

[4] 75 Pa.C.S.A. §§ 1701— 1799.7.

[5] Appellees later added Evans Delivery as an additional defendant.

Evans Delivery, rejecting UIM, was "invalid, illegal and void[.]" (First Amended Action for Declaratory Judgment, ¶ 51).

The trial court held a non-jury trial on June 17, 2013. The trial consisted of argument only. Neither of the parties called any witnesses, or offered additional evidence, relying on the Joint Stipulation and the Joint Trial Exhibits, plus the amended complaint for declaratory judgment and the answer. (**See** N.T. Trial, 6/17/13, at 4-5; **see also** Trial Court Opinion, 9/10/13, at 1). The trial court filed an opinion and order on September 10, 2013. In essence, the trial court reasoned that because the policy offered "no information on how the premium for UM/UIM was calculated . . . its terms are ambiguous and therefore must be construed in favor of the [Appellees]." (Trial Ct. Op., 9/10/13, at 12; Trial Ct. Op., 2/18/14, at 13). Appellants filed a motion for post trial relief, which the court denied, after oral argument, on December 23, 2013. This timely appeal followed.[6]

Appellants present one over-arching generic question and seven subsidiary questions for our review:[7]

---

[6] Appellants timely filed a concise statement of errors on January 31, 2014. **See** Pa.R.A.P. 1925(b). The trial court filed an opinion on February 18, 2014. **See** Pa.R.A.P. 1925(a).

[7] We have re-numbered Appellants' questions. In addition to mis-numbering their questions, we note that Appellants fail to comply with Pennsylvania Rule of Appellate Procedure 2119(a), which directs in pertinent part that "the argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in
*(Footnote Continued Next Page)*

Did the trial court abuse its discretion and commit an error of law by:

1. Holding that an alleged ambiguity in the calculation of the premium charged for uninsured and underinsured motorist coverage in states that required a mandatory minimum amount of coverage was equivalent to an ambiguity in the terms of the contract and scope of coverage offered under the policy that must be resolved against the [A]ppellants-insurer and named insured[?]

2. Holding that the intent of the Appellants was not clear[?]

3. Declaring that blanket underinsured motorist coverage existed under the commercial motor vehicle insurance policy number EDC 81600000 00 issued by [A]ppellant National Interstate Insurance Company to [A]ppellant Evans Delivery Company, Inc.[?]

4. Declaring that underinsured motorist benefits under the subject policy equaled the liability limits of $1,000,000[?]

5. Misconstruing the issue of whether [A]ppellees had standing to challenge [A]ppellant Evans Delivery's waiver of UIM coverage under the policy[?]

[6]. Failing to address whether the Pennsylvania Motor Vehicle Financial Responsibility law applied to [A]ppellees['] vehicle registered in Ohio[?]

7. Failing to declare that the rejection of UIM coverage form for Pennsylvania was valid and enforceable[?]

*(Footnote Continued)* ――――――――――

type distinctively displayed--the particular point treated therein[.]" Pa.R.A.P. 2119(a). Nevertheless, because Appellants' inconsistent numbering does not impede our review, and their issues are otherwise apparent, we will address their claims on their merits.

(Appellants' Brief, at 3-4).

We note our standard of review, and related legal principles applicable

to that review:

> Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence.

> Additionally,

>> [w]e will review the decision of the lower court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. The application of the law, however, is always subject to our review.

> As noted above, this case involves a dispute regarding insurance coverage. In actions arising under an insurance policy, our courts have established a general rule that it is a necessary prerequisite for the insured to establish that his claim falls within the coverage provided by the insurance policy. However, when the insurer relies on a policy exclusion as the basis for its denial of coverage, the insurer has asserted an affirmative defense and bears the burden of proving the exclusion.

*Erie Ins. Group v. Catania*, 95 A.3d 320, 322-23 (Pa. Super. 2014)

(citations and quotation marks omitted).

> Herein, the Declaratory Judgment Act has been invoked to interpret the obligations of the parties under an insurance contract. The proper construction of an insurance policy is resolved as a matter of law to be decided by the court in a declaratory judgment action. Hence, as with all issues of law, our review is *de novo*. Our standard of review in a declaratory judgment action is narrow. We review the decision of the trial court as we would a decree in equity and set aside factual conclusions only where they are not supported by adequate

evidence. We give **plenary** review, however, to the trial court's legal conclusions. . . .

Insurance policies are contracts, and in reviewing the trial court's determination, we are mindful of the following principles. In interpreting a contract, the court must ascertain the intent of the parties. Such intent is to be inferred from the written provisions of the contract. Where the contract language is clear and unambiguous, we are required to give effect to that language unless it violates a clearly expressed public policy. We have been reluctant to invalidate a contractual provision due to public policy concerns.

Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. . . .

**Policy provisions are ambiguous only when they are reasonably susceptible of different constructions and capable of being understood in more than one sense. A court cannot torture the policy language to create ambiguities where none exist.** This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. [C]ourts must construe the terms of an insurance policy as written and may not modify the plain meaning of the words under the guise of "interpreting" the policy. If the terms of a policy are clear, this Court cannot rewrite it or give it a construction in conflict with the accepted and plain meaning of the language used.

Where, as here, a defense is based on an exception or exclusion in a policy, the burden is on the insurer to establish its application. Exclusionary clauses generally are strictly construed against the insurer and in favor of the insured.

*Swarner v. Mutual Ben. Group*, 72 A.3d 641, 644-45 (Pa. Super. 2013),

*appeal denied*, 85 A.3d 484 (Pa. 2014) (citations, some punctuation and

internal quotation marks omitted) (emphases added).

**Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this

- 7 -

Commonwealth, **with respect to any motor vehicle registered or principally garaged in this Commonwealth**, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage).  Purchase of uninsured motorist and underinsured motorist coverages is optional.

75 Pa.C.S.A. § 1731(a) (emphasis added).

"[T]his Commonwealth does not require UIM coverage.  ***See*** 75 Pa.C.S. § 1731(a) (requiring the offer of UM and UIM motorist coverage, but declaring that such coverage is optional)."  ***Burstein v. Prudential Property and Cas. Ins. Co.***, 809 A.2d 204, 210 (Pa. 2002).

> Underinsured motorist coverage provides "protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa.C.S. § 1731(c).  While all motor vehicle liability insurance policies issued for vehicles registered in the Commonwealth must offer underinsured and/or uninsured motorist coverage, the 1990 amendments to the Motor Vehicle Financial Responsibility Law made the purchase of underinsured and/or uninsured motorist coverage optional.  75 Pa.C.S. § 1731(a).

***Eichelman v. Nationwide Ins. Co.***, 711 A.2d 1006, 1007 n.2 (Pa. 1998).

> [U]nderinsured motorist coverage serves the purpose of protecting innocent victims from underinsured motorists who cannot adequately compensate the victims for their injuries. That purpose, however, does not rise to the level of public policy overriding every other consideration of contract construction.  As this Court has stated, there is a correlation between premiums paid by the insured and the coverage the claimant should reasonably expect to receive.

***Adamitis v. Erie Ins. Exchange***, 54 A.3d 371, 376 (Pa. Super. 2012) (citations and internal quotation marks omitted).

- 8 -

Moreover, in his Concurring and Dissenting Opinion in [*Prudential Property and Cas. Ins. Co. v.*] *Colbert*[, 813 A.2d 747, 754-55 (Pa. 2002)]*,* then-Justice, now-Mr. Chief Justice Castille noted:

The overriding concern powering the decisions in *Burstein*, *Eichelman,* and the earlier cases is to ensure that both insurer and insured receive the benefit of what is statutorily required and contractually agreed-upon (consistently with statutory requirements) and nothing more. As this Court recognized in *Eichelman,* **an insured should not be permitted to demand coverage for a risk for which coverage was not elected or premiums paid.**

*Id.* (some citations omitted) (emphasis added).

In Pennsylvania, an insured is statutorily defined as follows:

**"Insured."** Any of the following:

(1) An individual identified by **name as an insured** in a policy of motor vehicle liability insurance.

(2) If residing in the household of the **named insured**:

(i) a spouse or other relative of the **named insured**; or

(ii) a minor in the custody of either the **named insured** or relative of the **named insured**.

75 Pa.C.S.A. § 1702 (emphases added). "An '**insured**' is defined at 75 Pa.C.S. § 1702, *inter alia*, as '[a]n individual identified **by name** as an insured in a policy of motor vehicle liability insurance.'" *Blakney v. Gay*, 657 A.2d 1302, 1304 (Pa. Super. 1995) (emphasis added).

"By its terms, the MVFRL applies only to policies delivered or issued for delivery in Pennsylvania, **with respect to any motor vehicle registered**

- 9 -

**or principally garaged in Pennsylvania**." ***Nationwide Mut. Ins. Co. v. West***, 807 A.2d 916, 920-21 (Pa. Super. 2002) (citation omitted; emphasis added).

Here, we first address Appellants' sixth question (applicability of Pennsylvania MVFRL to vehicle registered and principally garaged in Ohio).[8] (**See** Appellants' Brief, at 54-55). On review, we are constrained to conclude that the trial court erred in deciding that Appellees had a legal right to pursue UIM coverage in Pennsylvania under the Evans Delivery policy, pursuant to the MVFRL.

First, and foremost, the plain language of the MVFRL, under which Appellees claim, applies to vehicles "registered or principally garaged in this Commonwealth." 75 Pa.C.S.A. § 1731(a). There is no dispute that the vehicle at issue was registered in Ohio and not principally garaged in Pennsylvania. (**See** Stipulation ¶ 5). Therefore, the Pennsylvania MVFRL does not apply to Appellees. **See West**, **supra** at 920-21. The trial court erred on the law in ignoring the plain meaning of these statutory limitations, as confirmed by controlling caselaw. We lack jurisdiction to consider a claim

---

[8] Appellees argue that this issue was not preserved for appeal and is waived. (**See** Appellees' Brief, at 32). However, subject matter jurisdiction is always at issue, and we may raise it *sua sponte*. **See Dougherty v. Heller**, 97 A.3d 1257, 1261 (Pa. Super. 2014). "The appealability of an order is a question of jurisdiction and may be raised *sua sponte*." **Bolmgren v. State Farm Fire and Cas. Co.**, 758 A.2d 689, 690 (Pa. Super. 2000) (citation omitted).

which would require us to apply a Pennsylvania statute, in disregard of its plain meaning, to Ohio residents, in an Ohio accident, involving a truck registered and garaged in Ohio.[9]  Appellants are entitled to relief on this sixth issue alone.[10]

Moreover, even if we were to assume for the sake of argument that the Pennsylvania MVFRL did apply, the evidence of record established the fact that Evans Delivery intentionally rejected UIM coverage in Pennsylvania. In fact, the parties stipulated that it was the intention of Evans Delivery to reject UIM (and UM) coverage in the policy at issue.  (**See** Stipulation ¶ 29).

The trial court abused its discretion in ignoring this stipulation along with companion evidence that Evans Delivery consistently rejected UIM coverage in virtually every state where it was legally permitted to do so and,

_____

[9] Indeed, the attempt to apply purported Pennsylvania requirements to Ohio residents, for events which occurred in Ohio, raises choice of law questions and problems of constitutional dimensions, neither addressed by the trial court.  The trial court concedes that Pennsylvania law does not mandate coverage in Ohio ("nor could it").  (Trial Ct. Op. 2/18/14, at 14). Nevertheless, it claims that it is not applying its ruling to Ohio, only construing Pennsylvania law as to coverage the policy already provides. (**See id.**).  The bald assertion is counter-intuitive, contradicted by the evidence of UIM rejection, and, importantly, unsupported by any reference to controlling authority.  We are not persuaded.

[10] Because this issue (the non-applicability of Pennsylvania's MVFRL) is dispositive, we need not reach the additional issues raised.  However, to avoid any confusion, especially in light of the reasoning of the trial court, and in the interests of clarity and completeness, we will address Appellants' other issues on the merits as well.

where UIM was required, selected the statutory minimum.[11] (**See** Trial Ct. Op., 2/18/14, at 13; **see also** Joint Trial Exhibits A-E). Pennsylvania does not require UIM coverage. **See Burstein**, **supra** at 210 (citing 75 Pa.C.S.A. § 1731(a)).

The trial court further erred in ruling that Evans Delivery was legally obligated to provide Appellees the benefit of UIM coverage, even though the purchase of UIM coverage is optional under Pennsylvania law, and Evans expressly rejected it. (**See** Trial Ct. Op., 2/18/14, at 13-14).

Appellees, who are indisputably **not** named insureds, are not "insureds" within the statutory meaning of the term. 75 Pa.C.S.A. § 1702. Therefore, the trial court's categorical insistence that Appellees were "indisputably . . . insureds[,]" (Trial Court Opinion, 2/18/14, at 9; **see also** **id.** at 10; Memorandum Opinion, 9/09/13, at 9), is misleading, and at best, over-simplified.

For purposes of our review of the trial court's legal conclusions, it is more appropriate to recognize that, under Pennsylvania law, Appellees would be, at most, third-party beneficiaries. "An injured person who makes a claim for uninsured motorist benefits under a policy to which he is not a signatory is in the category of a **third party beneficiary.**" **Egan v. USI**

---

[11] The only exception is that Appellants could not produce evidence of a rejection in South Carolina.

***Mid-Atlantic, Inc.***, 92 A.3d 1, 20 (Pa. Super. 2014) (citation omitted) (emphasis added).

Because Appellees were not named insureds, they did not elect UIM coverage under the Evans Delivery policy at issue, indeed, could not, and indisputably paid no premium for it. Thus, they had no reasonable expectation, or legally cognizable claim, of UIM coverage. ***See Been v. Empire Fire and Marine Ins. Co***. 751 A.2d 238 (Pa. Super. 2000), *appeal denied*, 764 A.2d 1063 (Pa. 2000):

> This Court concludes that the language of the policy afforded Budget [car rental agency], as the "named insured", with the statutory right to reject UM/UIM coverage. ***Blakney v. Gay***, 441 Pa.Super. 547, 657 A.2d 1302, 1303 (1995), *alloc. den*. 542 Pa. 655, 668 A.2d 1119 (1995). Also, **there is no statutory requirement that uninsured motorist benefits be provided by a liability carrier for third persons who may be injured by an insured vehicle. *Id*. at 1304. Lastly, one may not create UM/UIM coverage where none exists. *Id*.**

***Id.*** at 241 (emphasis added).

Nevertheless, Appellees argue that Evans Delivery's rejection form was void, citing ***Jones v. Unitrin Auto and Home Ins. Co.***, 40 A.3d 125 (Pa. Super. 2012). (***See*** Appellees' Brief, at 33-38). However, we need not reach the question of the legal adequacy of the rejection form, because, as we have already decided, the Pennsylvania MVFRL does not apply to Appellees. Secondly, as third party beneficiaries, Appellees had no cognizable claim for UIM benefits. ***See Egan***, ***supra*** at 20; ***Been***, ***supra*** at 241.

Thirdly, Appellees' reliance on **Jones** is misplaced, because Ms. Jones **was** a named insured. **See Jones**, **supra** at 126. This is not a case in which the first named insured contests the statutory sufficiency of the notice on the rejection form, as occurred in **Jones**. To the contrary, in this appeal the insurer and the named insured agree that Evans Delivery intentionally rejected UIM coverage in Pennsylvania, as well as other states where it was legally permitted to do so. (**See** Appellants' Brief, at 16).[12]

Finally, on this issue, Appellees failed to establish that their claim falls within the coverage provided by the insurance policy. **See Catania**, **supra** at 322-23. Therefore, Appellants are entitled to relief on their seventh question (validity of UIM rejection).

Because Appellants intentionally and validly rejected UIM coverage, they are also entitled to relief on their third question (whether the trial court erred in its declaration of UIM coverage). Furthermore, because the record supports the finding that the intent (to reject UIM coverage in Pennsylvania)

---

[12] Moreover, to the extent that the issue of rejection is not precluded for the reasons already noted, we would conclude that the rejection form was valid and binding. **See Winslow-Quattlebaum v. Maryland Ins. Group**, 752 A.2d 878, 881 (Pa. 2000) (concluding, *inter alia*, that to give effect to entire instruction regarding basic UIM waiver, other UIM information on the same page cannot operate to void rejection form). We further note that "[i]t is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court." **Vosk v. Encompass Ins. Co.**, 851 A.2d 162, 165 (Pa. Super. 2004) (citation omitted).

was clear, and the parties stipulated to the intent to reject, (***see*** Stipulation ¶ 29), Appellants are entitled to relief under their second claim as well (trial court finding intent not clear).

It bears repeating for emphasis and clarification that Appellees are not named insureds. They had no cognizable legal right to request, did not request, and did not pay a premium for UIM coverage in Pennsylvania. At best, they were third party beneficiaries of the policy. Therefore, they had no reasonable expectation of UIM coverage in Pennsylvania, particularly as an adjunct for supplementary recovery beyond what was recoverable—and recovered—under Ohio law. Appellees are not entitled to such relief.

Our conclusion is not altered by the trial court's assertion of ambiguity. In their first question, Appellants challenge the trial court's conclusion, that an alleged ambiguity in the calculation of the premium entitled the court to find that the terms of the policy were ambiguous (without limitation), and must be construed in favor the Appellees. (***See*** Appellants' Brief, at 3). Appellants argue that the trial court found an ambiguity where none existed to provide UIM coverage even though no such coverage existed. (***See id.*** at 25-29). We agree.

We perceive two major difficulties with the reasoning of the trial court. First, there is no demonstrable ambiguity in the calculation of the premium. Second, even if there were, it does not justify a reinterpretation of the UIM provisions of the policy.

This Court has long recognized that "[i]n this State, we do not 'create' a doubt in insurance cases, 'which would not be tolerated in any other kind of contract', in order to resolve it in favor of the insured[.]" ***McCowley v. N. Am. Acc. Ins. Co.***, 29 A.2d 215, 215 (Pa. Super. 1942) (citation omitted) (collecting cases); ***see also Huffman v. Aetna Life and Cas. Co.***, 486 A.2d 1330, 1334 (Pa. Super. 1984) (recognizing that "this Court cannot create a doubt for the purpose of resolving it in favor of the insured . . . where language in an insurance contract is clear and unambiguous, Pennsylvania courts must give effect to that language.") (citations omitted)

As we have already noted, "[p]olicy provisions are ambiguous only when they are 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" ***Swarner***, ***supra*** at 645 (citation omitted). Absence of information, even if assumed for the sake of argument, is not the equivalent of ambiguity, especially when the information is not relevant to the claims at issue.

Furthermore, an ambiguity once asserted, however tortuously, cannot be applied *ad libitum* to any other term in the policy, however clear and unambiguous in itself. A declaration of ambiguity does not justify a wholesale reformation of independent, unrelated provisions in a policy. The trial court offers no supporting authority to the contrary. Moreover, here, there is no ambiguity, especially none that affect the disposition of this case. This is a coverage dispute, not a premium pricing dispute.

While the trial court's explanation is rather elliptical, it appears to reason that because the premiums for various items of coverage were concededly "rolled up" the allocation of premiums was "ambiguous." (**See** Trial Ct. Op., 2/18/14, at 13). The court offers no supporting authority for this conclusion. (**See id.**)

Instead, selecting items from various parts of the policy, the trial court identifies $3,241,960 as the "coverage part" of the premium, (**id.** at 8; **see also** Joint Trial Exhibit E), compares this charge to the premium for liability coverage ($3,052,243), and finds that the difference ($189,717) constitutes the premium paid for UM/UIM coverage. (**See** Trial Ct. Op., 2/18/14, at 8 ¶ 41). The court appears to conclude that some of the premium could therefore be attributable to an allocation for UIM coverage in Ohio for Appellees. (**See** Trial Ct. Op. 2/18/14, at 8, ¶¶ 41, 42). Again, this entire line of reasoning is unsupported by any reference to controlling authority, or to the facts of record.

To the contrary, the court's computations and conclusions ignore the reality that the policy pages from which it derives its basic amounts allocate **nothing** for uninsured motorist coverage or underinsured motorist coverage. (**See**, **e.g.**, Joint Trial Exhibit E, at 1004; 1007). Rather, the spaces provided to identify premiums for these coverages are left blank.

Furthermore, the nominal attribution of one and two dollar premiums for four categories of coverage, including personal injury protection (PIP),

while the basic premium exceeds three million dollars, lends further support to the conclusion that the premiums on this policy actually were "rolled up" rather than itemized.

Therefore, the trial court's assumptions and mathematical computations are purely speculative, and contradicted by the express declarations of the policy. We are constrained to conclude that the trial court's findings of fact are not supported by the evidence of record, and it has abused its discretion.

In any event, Appellees' claims depend on the applicability of the Pennsylvania MVFRL, and, alternatively, the validity and enforceability of the rejection of UIM coverage, not the actuarial apportionment of premiums for coverage requested. There is no dispute or ambiguity that in this case, the coverage claimed was **not** requested by the named insured. It was rejected. The trial court cannot manufacture an ambiguity in one specific provision of the policy, and then use it to reform entirely unrelated provisions of the policy.

It is beyond dispute that Appellees paid no premiums for the additional UIM coverage now demanded, and, because they are not named insureds, could not have, even if they tried. Premiums are relevant in this case, or others like it, only to the extent that a named insured is denied coverage for which he, she, or it, has paid a corresponding premium. "[T]here is a correlation between premiums paid by the insured and the coverage the

claimant should reasonably expect to receive." ***Adamitis***, ***supra*** at 376 (citation omitted).

"As this Court recognized in ***Eichelman***, an insured should not be permitted to demand coverage for a risk for which coverage was not elected or premiums paid." ***Id.*** (citation omitted). Appellants' first question would also merit relief.

In their fourth question, Appellants challenge the trial court's determination that UIM benefits are available up to the general policy limits of one million dollars per accident. (***See*** Appellants' Brief, at 3). Appellants argue that the trial court concluded that the only limit to UIM coverage was the maximum liability limit in the policy, $1,000,000.00.[13] (***See id.***, at 46-51). They cite the trial court's holding that the lack of a rejection form for UIM in Ohio (which apparently does not require a formal rejection form), coupled with the trial court's determination that UIM coverage was available under the policy, resulted in the conclusion that there was "no statement limiting [UIM] coverage for insureds in Ohio." (Trial Ct. Op., 2/18/14, at 13).[14]

---

[13] The trial court never explicitly says this. Nevertheless, on review, Appellants' claim is the most reasonable, if not the only, inference to draw from the trial court's generalized but sweeping language. (***See*** Trial Ct. Op., 4/18/14, at 13)

[14] The trial court's Rule 1925(a) opinion discussion of this issue tracks virtually identical language in its preceding opinion.

Because we have already determined that Appellees are not entitled to claim UIM under Pennsylvania law at all, we need not address the trial court's determination that they are eligible for UIM benefits up to a million dollars. Appellees have no legal right to UIM benefits under this policy. Appellants' fourth question is moot.

Similarly, we need not address Appellants' argument in support of its fifth question, on standing. (**See** Appellants' Brief, at 51-53). Appellants' reliance on **Been**, **supra** at 241, is misplaced. (**See id.**, at 52). **Been** addresses entitlement to UIM benefits, not standing. It appears that Appellants may have confused standing to make a claim with entitlement to relief on the merits. In any event, here, Appellees have had a full and fair opportunity to present their claims. This issue is also moot.

Finally, we express our sincere concern for the misfortunes visited on Appellees. However, compassion does not relieve us of our responsibility to review the issues raised on appeal under our standard of review, and the related principles of law previously noted. An insurance policy is a contract. **See Swarner**, **supra** at 644. "The overriding concern . . . is to ensure that both insurer and insured receive the benefit of what is statutorily required and contractually agreed-upon (consistently with statutory requirements) and nothing more." **Adamitis**, **supra** at 376 (citations omitted). The named insured has the statutory right to reject UIM coverage. **See Been**,

*supra* at 241.  Here, the named insured rejected it.  "[O]ne may not create UM/UIM coverage where none exists."  *Id.*

Order vacated.  Declaration of coverage reversed.  Case remanded for disposition in accordance with this opinion.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/16/2014