J-A07013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BERKS COUNSELING CENTER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| COMMUNITY CARE BEHAVIORAL HEALTH ORGANIZATION | : | |
| | : | No. 898 MDA 2017 |
| Appellant | : | |

Appeal from the Order Entered March 10, 2017
In the Court of Common Pleas of Berks County
Civil Division at No(s):  15 14644

BEFORE:   PANELLA, J., OLSON, J., and STEVENS\*, P.J.E.

MEMORANDUM BY PANELLA, J.          **FILED: NOVEMBER 7, 2018**

Community Care Behavioral Health Organization ("Community Care") is a non-profit behavioral health managed care organization that administers health care benefits to its members in Berks and Chester counties. It contracts with behavioral healthcare professionals to provide care for its members with behavioral disabilities and pays for the care from Medicaid funds. Berks Counseling Center ("BCC") is one such behavioral healthcare provider.

As part of its administration of Medicaid funds, Community Care monitors its providers for fraud, waste, or abuse of taxpayer funds. In 2015, Community Care determined BCC, and its satellite office, Chester Counseling

_____

\* Former Justice specially assigned to the Superior Court.

Center ("CCC"), had failed a fraud, waste, or abuse audit sufficient to require repayment of $105,486.13 in Medicaid funds. The parties refer to this action as a "retraction."

BCC subsequently filed this declaratory judgment action, seeking a ruling that, under its contract with Community Care, retraction was not a proper remedy for the deficiencies identified in the audit. BCC asserted that "provider education," a process where Community Care assists the contractor in complying with contractual and regulatory requirements, was the proper remedy for most of the infractions. It sought to cancel the retraction of approximately $80,000.

After a bench trial, the court determined that BCC was entitled to the cancellation of $81,704.47 in retractions. The court denied post-trial motions, and Community Care filed this timely appeal.[1] Community Care claims the court erred eight different ways in entering judgment. We affirm.

Preliminarily, we have to comment on Community Care's brief. It raises *eight* challenges to the trial court's order. Raising so many issues reminds us of Justice Robert H. Jackson's warning about such an approach:

---

[1] Community Care purports to appeal from the order entered May 9, 2017, denying post-trial motions. This was not the final, appealable order for appellate purposes. The appeal should have been properly taken from the order of declaratory judgment, which is the final order. **See Peters v. National Interstate Ins. Co.**, 108 A.3d 38, 41 n.2 (Pa. Super. 2014). We have corrected the caption accordingly.

Legal contentions, like the currency, depreciate through overissue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at a lack of confidence in any one. Of course, I have not forgotten the reluctance with which a lawyer abandons even the weakest point lest it prove alluring to the same kind of judge. But experience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one.

Ruggero J. Aldisert, J. "Winning on Appeal: Better Briefs and Oral Argument," at 130 (2d ed. 2003) (quoting Robert H. Jackson, "Advocacy Before the United States Supreme Court," 37 Cornell L.Q. 1, 5 (1951)).

This "much quoted" advice, unfortunately, "often 'rings hollow'...." **Commonwealth v. Robinson**, 864 A.2d 460, 480 n.28 (Pa. 2004) (citing Ruggero J. Aldisert, J. "The Appellate Bar: Professional Competence and Professional Responsibility–A View From the Jaundiced Eye of the Appellate Judge," 11 Cap. U.L. Rev. 445, 458 (1982)). But its importance cannot be overstated. **See**, **e.g.**, **Jones v. Barnes**, 463 U.S. 745, 751-752 (1983) ("Experienced advocates since time beyond memory emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."); **Howard v. Gramley**, 225 F.3d 784, 791 (7th Cir. 2000) ("[O]ne of the most important parts of appellate advocacy is the selection of the proper claims to urge on appeal. Throwing in every conceivable point is distracting to appellate judges, consumes space that should be devoted to developing the arguments with some promise, inevitably clutters the brief with issues that have no chance …

and is overall bad appellate advocacy."); Aldisert, *supra* at 129 ("When I read an appellant's brief that contains more than six points, a presumption arises that there is no merit to *any* of them.")

Indeed, this presumption is borne out by Community Care's brief. Outside of its first and sixth issues (labeled "A." and "F.," respectively), Community Care does not provide any citation to authority for its arguments. *See* Pa.R.A.P. 2119(a) (requiring citation to pertinent legal authority in support of a party's legal argument). "The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007) (*en banc*) (citation, brackets, and quotation marks omitted). "[T]his Court has held that arguments which are not sufficiently developed are waived." *Brody v. Brody*, 758 A.2d 1274, 1281 (Pa. Super. 2000) (citation omitted).

For example, in issue "B.," Community Care argues the court erred in finding that BCC and CCC were separate entities for the purpose of applying the FWA 015 policy. Community Care does not cite to any authority on the issue of interpreting and construing contracts. Nor does it cite any law on business entities. In fact, despite several arguments requesting we overturn the trial court's legal conclusions on the scope of the contract between the parties, Community Care never cites to any authority to support its belief the trial court incorrectly construed the contract.

Due to Community Care's failure to comply with the requirements of Pa.R.A.P. 2119(a), we are unable to provide meaningful review of these issues. Thus, we find issues "B." through "E." as well as issues "G." and "H." waived. *See*, *e.g.*, *Beshore*, 916 A.2d at 1140; *In re Jacobs*, 936 A.2d 1156, 1167 (Pa. Super. 2007).

The facts are largely undisputed. Community Care contracted with BCC to provide services starting in 2001. The parties updated their agreement in 2007. The 2007 agreement is the foundational document that governs the current dispute.

That agreement allowed Community Care to amend the agreement by providing written notice to BCC. Any amendment was subject to approval by appropriate governmental agencies, if governing law required it. Also, the agreement would be "deemed amended to comply with any change in applicable state or federal law or regulation." 2007 Agreement, at ¶ 11. E.

The parties subsequently amended the 2007 agreement to include CCC. The amendment was executed in a writing signed by both parties. CCC is a registered fictitious name of BCC, and is not a separate legal entity.

The primary dispute between the parties is a document known as Community Care's FWA 015 policy. Specifically, the parties disagree on the version of the FWA policy that governed Community Care's audits of BCC and CCC in 2015.

BCC conceded at trial that an unsigned document labeled "FWA 015 Policy" and dated May 31, 2011, was a valid amendment to the 2007 agreement. The FWA 015 policy provides the process used by Community Care to implement its Medicaid mandated program for eliminating fraud, waste, or abuse of Medicaid funds. Pursuant to FWA 015, Community Care would perform periodic audits of BCC's records to ensure compliance with recordkeeping and other requirements.

FWA 015 sets forth a non-exclusive list of audit deficiencies and identifies the associated consequences. There are three possible consequences identified in the policy. For the most serious deficiencies, "[r]epayment or retraction is expected[.]" For less serious deficiencies, "provider education for the first audit," while a deficiency after a "second audit will result in provider repayment or retraction for *the same deficiency*[.]" (emphasis supplied). For minor deficiencies, Community Action would alert BCC of the deficiency, but no retraction would be taken. At the bottom of every page in the policy is the disclaimer:

> All policies, standards, rules, directive, or regulations contained in these materials and however denominated, developed, published or promulgated by Community Care are proprietary and confidential information of Community Care and are subject to change, revision, modification or withdrawals by Community Care at any time without notice and subject only to any required governmental approvals as to such changes or modifications.

BCC never objected to this disclaimer. **See** N.T., Bench Trial, 1/19/17, at 70.

At the end of 2014, Community Care modified the FWA 015 policy. The primary relevant change occurred in the description of the second, intermediate consequence from an audit deficiency. Now, a deficiency found after a "second audit will result in provider repayment or retractions *for all deficiencies identified*[.]" (emphasis supplied).

In 2014, Community Care conducted two audits of BCC. Community Care found level two deficiencies in each audit, and imposed provider education on BCC.

The audits at issue here occurred in 2015. The first audit concerned BCC, while the second audit concerned CCC. Community Care found multiple level two deficiencies in both audits. It concluded the 2015 audits were second audits of BCC, and therefore imposed retractions.

BCC filed a complaint for declaratory judgment, seeking a definitive statement as to Community Care's right to retraction under the contract. After holding a one-day trial, the court found that the original, 2011 FWA 015 policy applied. It thus concluded Community Care was not entitled to retraction on a significant number of the audit deficiencies, and declared that BCC was entitled to an award of $81,704.47.

The court denied Community Care's post-trial motion. Community Care subsequently filed this timely appeal.

Our review of a declaratory judgment is narrow. **See Peters**, 108 A.3d at 42. If the court's factual findings have support in the record, we may not

substitute our judgment for the court's. *See id*. However, we review the court's application of the law *de novo*. *See id*., at 43. We may only reverse if the court "clearly abused its discretion or committed an error of law." *Id*., at 42. "The purpose of a declaratory judgment action is to afford relief from uncertainty and insecurity with respect to legal rights, status and other relations." *Osram Sylvania Products, Inc. v. Comsup Commodities, Inc.*, 845 A.2d 846, 849 (Pa. Super. 2004) (internal quotation marks and citations omitted).

Turning to Community Care's preserved arguments, it first contends the trial court erred in ignoring regulatory requirements when it found Community Care had improperly imposed retraction on CCC. The trial court found that Community Care had retracted funds based upon CCC's failure to have the supervising physician's signature on initial assessments for patients. *See* Trial Court Opinion, filed 3/10/17, at ¶ 73.

However, at trial, Community Care asserted that the retraction was not merely for a missing signature, but because CCC failed to have a supervising physician at all during the audit period. BCC conceded that it did not have a supervising physician during the audit period. *See* N.T., Bench Trial, 1/19/17, at 40.

Community Care argues that pursuant to 55 Pa. Code § 1223.52(a)(6)(i) payment is conditioned on the supervisory physician's review of and signing off on a patient's "level of care assessment, psychosocial

evaluation, treatment plan, and diagnosis[.]" BCC conceded at trial that Medicaid regulations required a supervising physician sign off on treatment plans. *See* N.T., Bench Trial, 1/19/17, at 42. "[W]e know that and we abide by that [§ 1223.52(a)(6)(i)'s requirement to have a doctor sign treatment plans] to the best of our ability. We did stop seeing clients once we were told by [Community Care] that it was absolutely necessary." *Id*., at 42.

Thus, the record establishes that CCC violated § 1223.52(a)(6)(i). And that section provides that payment will not be made if it is violated. However, nothing in the record establishes Community Care's power to enforce the mandates of § 1223.52(a)(6)(i), except for the agreement between the parties.

The trial court concluded that this was the first audit of CCC under the contract with Community Care. Thus, it held that provider education was the only remedy available to Community Care under the agreement with BCC. Community Care's argument that this interpretation of the contract was in error is waived due its failure to develop the argument properly with citations to authority.

CCC concededly violated the applicable regulations. But Community Care has not established its authority to impose retraction for the violation. As a result, Community Care's issue "A." does not merit any relief.

In Community Care's second and final preserved issue on appeal, it contends the trial court erred in concluding that BCC had substantially

performed its obligations under the contract. Substantial performance embodies the recognition that justice is not served by imposing forfeiture due to technical or trivial failures. **See Atlantic LB, Inc. v. Vrbicek**, 905 A.2d 552, 558 (Pa. Super. 2006). It is "intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars...." **Id**. (citation omitted). However, substantial performance does not apply where the breaching party has acted intentionally. **See In re Carson Estate**, 37 A.2d 488, 491-492 (Pa. 1944).

Community Care identifies two specific breaches on the part of BCC that it believes should not qualify for substantial performance. First, it argues that BCC's failure to have a supervising physician cannot constitute substantial performance. As shown above, however, the trial court concluded Community Care did not have the right to impose retraction for this breach under the contract. Thus, even if BCC did not substantially perform its duty to have a supervising physician sign off on treatment plans, Community Care is due no relief.

The second breach identified obliquely by Community Care is BCC's failure to determine "whether the documentation [it submitted] was compliant before it submitted it[.]" Appellant's Brief, at 55. Community Care does not explicitly identify what documentation it is referencing in this argument. However, a review of the brief as a whole implies Community Care is taking

issue with the trial court's decision to disregard the contractual requirement that BCC's initial response to an audit be full and complete.[2]

BCC concedes the contract provided that no documents would be accepted after the day of the audit. The dispute here was based on BCC's documentation of treatment plans submitted during the audit. When BCC submitted the documents electronically, the physician's signature was not visible. Community Care notified BCC of this failure, and BCC responded the same day by printing out physical copies of the records and sent them to Community Care.

The court found that the signatures were not visible on the electronic submission due to a "software glitch." Trial Court Opinion, 3/10/17, at ¶ 47. Also the court found that it was not due to user error. *See id*., at ¶ 48. Thus, the court found the physical print outs were "not supplemental documentation to be considered for the audit, rather it was clarification documentation or what had always been present in the records." *Id*., at ¶ 51. Furthermore, the court found Community Care had not established "that signatures were

---

[2] This argument mirrors the argument set forth in issue "C.," where Community Care argued the proper construction of the contract excluded review of any response to the audit other than the initial one. As noted above, issue "C." is waived due to Community Care's failure to cite *any* authority to support its argument. In contrast, Community Care has preserved its challenge to the court's finding that BCC substantially performed by including citations to authorities supporting its argument.

actually missing from the BCC records and in fact admitted that some of the signature[s] were present in the BCC records." *Id*., at ¶ 55.

These findings are all well supported by the record. Under these circumstances, we cannot conclude the trial court erred in finding that BCC had substantially performed with regard to these specific treatment plans.

As none of Community Care's issues merit relief, we affirm the declaratory judgment order.

Order affirmed.

President Judge Emeritus Stevens joins the memorandum.

Judge Olson concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/07/2018