J-A14016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ERIE INSURANCE EXCHANGE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| LITTLE DUCKLINGS DAY CARE ASSOCIATES, LP, LITTLE DUCKLINGS DAYCARE GP LLC AND LITTLE DUCKLINGS DAYCARE & PRESCHOOL, MARYANN C. TOLSON AND RICHARD TOLSON, ANN MARIE DELUCA AND MICHAEL DELUCA, THE ESTATE OF CARMEN NERI AND MICHAEL G. NERI, | |
| APPEAL OF: THE ESTATE OF CARMEN NERI, AND MICHAEL G. NERI | |
| | No. 168 EDA 2017 |

Appeal from the Judgment Entered December 22, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): June Term, 2015, No. 15-0602601

BEFORE:  BENDER, P.J.E, BOWES AND SHOGAN, JJ.

MEMORANDUM BY BOWES, J.:                **FILED SEPTEMBER 27, 2017**

Michael G. Neri, individually, and in his capacity as Executor of the Estate of Carmen Neri (collectively "Landlord"), appeals from the December 22, 2016 grant of summary judgment in favor of Erie Insurance Exchange ("Erie") in this insurance coverage dispute.[1]  We affirm.

---

[1]  An estate cannot commence an action in its own name.  The personal representative of the estate brings the action in his official capacity on behalf of the estate.

Erie filed the within declaratory judgment action on June 19, 2015, seeking a declaration that it did not owe the Little Ducklings Daycare and Preschool LLC (the "Daycare"), its members and their spouses (collectively "Underlying Defendants"), a duty to defend or indemnify in the underlying action captioned **Neri, et al v. Hatzold, et al**, No. 3335 May Term 2014, Philadelphia ("Underlying Case"). The trial court granted summary judgment in favor of Erie, and Landlord filed the within appeal.

Since the insurance policy and the pleadings in the Underlying Case govern the scope of coverage, we glean the relevant facts from those documents. On March 1, 2010, the Daycare entered into a five-year lease ("Lease") with Landlord for the premises located at 7820 Frankford Avenue in Philadelphia. Daycare members and sisters, Maryann C. Tolson and Ann Marie DeLuca, executed the Lease on behalf of the LLC. The Lease provided, *inter alia*, that Daycare was obligated to purchase commercial general liability insurance on an occurrence basis, verify that it had obtained such coverage, and provide proof of same to Landlord by providing a copy of the declaration page "naming Landlord as an additional insured thereunder." Daycare complied and purchased the Erie Ultraflex occurrence-based commercial general liability policy that is the subject of the instant dispute. The Lease identified Maryanne L. and Thomas Hatzold, their parents, as guarantors ("Guarantors") on the Lease, and they executed a written lease guaranty agreement ("Guaranty") the same day.

Subsequently, the Daycare defaulted on the rent and Landlord threatened to exercise available remedies under the Lease and Guaranty.[2] However, on September 1, 2011, in lieu of exercising those remedies, Landlord entered into a Forbearance Agreement ("Forbearance Agreement") with the Daycare, the Guarantors, and Michael DeLuca, husband of LLC member Ann Marie DeLuca. The parties stipulated therein that the rent was $30,744 in arrears. However, beginning in September 2011, the arrearages would be satisfied by Mr. DeLuca, a master carpenter, who would make improvements to the home of Mary T. Neri, Landlord's mother, "until the Rent Arrearages are paid in full." Forbearance Agreement, Article 2.3. Under the terms of the Forbearance Agreement, "[t]he nature, scope, extent and cost of the Improvements, and the value of any and all services performed by DeLuca, shall be determined by the mutual consent of the Landlord and DeLuca[,]" but neither Landlord nor the homeowner would pay DeLuca for his services. *Id*. DeLuca would have to look exclusively to the Daycare or Guarantors for payment or compensation. *Id*. at 2.4.

The Forbearance Agreement also provided that, when the forbearance period terminated either by default or expiration, "the Landlord may take

---

[2] Section 19 of the Lease defined default and remedies for default available to Landlord including termination, acceleration of the balance of the rent, re-entry and re-leasing of the property, confession of judgment, any other remedies existing at law or in equity.

any enforcement action against the [Daycare] and the Guarantors to collect the Rent Arrearages." *Id*. at 2.5.  Landlord also advanced $7,100 to Mr. DeLuca to purchase construction materials for the anticipated improvements to the his mother's home.

Landlord filed the Underlying Case against Daycare, Guarantors, the DeLucas and the Tolsons on March 23, 2015.  Landlord pled in count I of his complaint that the Daycare breached the Lease by failing to pay rent when due, and leveled the same allegation against Guarantors at count II.  Count III contained allegations that Mr. DeLuca's negligent performance of the home improvements, specifically failing to install the proper windows, properly account for the $7,100 advance, finish the improvements, and properly secure a patio roof, which allegedly resulted in additional damage to Mary Neri's home, constituted a breach of the Forbearance Agreement by all of the Underlying Defendants, and Landlord sought damages representing the amount of the outstanding rent.

In addition, and most importantly for purposes of this appeal, Landlord pled a count in negligence.  He alleged that he relied on the "skill, judgment and good faith of Defendant, Michael DeLuca, in making the home improvements contemplated by the Forbearance Agreement," and that damage to the Neri residence resulted from the negligence and gross

negligence of the Underlying Defendants.  Complaint at ¶58.[3]  The remaining counts contained allegations of intentional torts of conversion, bad faith, fraud and deceit, and conspiracy.  Erie defended the Underlying Case under a reservation of rights pending a final decision in this case.

After Erie filed the within declaratory judgment action, none of the Underlying Defendants filed a responsive pleading to Erie's complaint.  Consequently, Erie was granted a default judgment against them.  However, Landlord filed a timely answer and new matter, Erie filed preliminary objections to Landlord's new matter,[4] and after the court overruled those preliminary objections, Erie filed a reply to new matter.

Erie subsequently filed a motion for summary judgment against Landlord on two independent bases: first, that the Daycare, the Tolsons, and the DeLucas were not "insureds" for the claims pled in the Underlying Complaint; and second, that the pleadings did not allege an "occurrence" that would trigger coverage under the Policy.  The trial court entered

---

[3]  In the Underlying Case, Landlord is seeking damages for both breach of contract and negligence based upon faulty workmanship and property damage to the home of Mary T. Neri.  Mary T. Neri is not a plaintiff in the Underlying Case.

[4]  Erie pled that Landlord was not an insured under the policy and had no standing to assert a bad faith action against the insurer.  Erie also alleged that Landlord did not plead a valid assignment to pursue a bad faith claim, and, furthermore, it defended its coverage position as reasonable and supported by legal authority.

summary judgment in favor of Erie on the latter theory: that the Underlying Complaint did not allege an occurrence that would trigger coverage under the commercial general liability insurance policy issued by Erie to Little Ducklings Daycare. Consequently, the insurer had no duty to defend or indemnify Underlying Defendants on the underlying claim.

Landlord timely appealed and presents eight questions for our review:

[1] Whether the trial court erred because it improperly reconsidered and reversed its prior order which had overruled Erie's Preliminary Objections?

[2] Whether the trial court erred because the issue of which persons and/or entities are insured under the Erie Policy, and whether as individuals, a partnership, a limited liability company or other entity, are disputed questions of fact that have yet to be determined?

[3] Whether the trial court erred because it concluded that the damage to the property in question, was to the insured's "work product" (which consists of the operation of a daycare and preschool) and, therefore, not covered under the Erie Policy, rather than constituting damage to the property of another, which the court expressly found would be covered under the Erie Policy?

[4] Whether the trial court erred because it failed to recognize that the Forbearance/Indemnity Agreement at issue is an "insured contract" under the Erie Policy?

[5] Whether the trial court erred because it failed to recognize that the Erie Policy covers liability for property damage because the insured assumed the tort liability of another in an insured contract regardless of whether said damage was the result of an occurrence?

[6] Whether the trial court erred because its holding, *i.e.*, that the Erie Policy covered property damage only if said damage was the result of an "accident," contradicted, modified or

altogether nullified the explicit coverage that the insured had purchased for property damage occurring under an insured contract?

[7] Whether the trial court erred because negligence can be considered an "occurrence" under the Erie Policy and Pennsylvania law?

[8] Whether the trial court erred because it failed to recognize that some or all of the damage to the property in question was caused by the continuous or repeated exposure to substantially the same harmful conditions, thereby constituting an "occurrence" under the Erie Policy and Pennsylvania law?

Appellant's brief at 9-10.

Landlord is challenging the trial court's grant of summary judgment in favor of Erie herein. In reviewing the grant of summary judgment, our scope of review is plenary.

Accordingly, we must consider the order in the context of the entire record. Our standard of review is the same as that of the trial court; thus, we determine whether the record documents a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law. Conversely, if a question of material fact is apparent, the court must defer the question for consideration of a jury and deny the motion for summary judgment. We will reverse the resulting order only where it is established that the court committed an error of law or clearly abused its discretion.

*Am. Nat'l Prop. & Cas. Cos. v. Hearn*, 93 A.3d 880, 883 (Pa.Super. 2014) (quoting *Grimminger v. Maitra*, 887 A.2d 276, 279 (Pa.Super. 2005) (quotations omitted). We "view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of

material fact must be resolved against the moving party." ***Evans v. Sodexho*** 946 A.2d 733, 739 (Pa.Super. 2008) (quotation omitted).

The issue herein is whether the insurer had a duty under a commercial general liability policy issued to the Daycare to defend and indemnify the Daycare and others in the underlying suit brought by the Landlord. Such a duty depends upon whether the third party's complaint triggers coverage under the policy. ***Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.***, 908 A.2d 888, 896 (Pa. 2006). The court resolves the question of coverage. ***Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.***, 2 A.3d 526 (Pa. 2010). That determination involves the construction of an insurance policy and the scope of coverage, which is a matter of law in a declaratory judgment action. ***Am. Nat'l Prop. & Cas. Cos.***, ***supra***. The following principles apply:

> When interpreting an insurance policy, we first look to the terms of the policy. When the language of the policy is clear and unambiguous, we must give effect to that language. However, when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured. Also, we do not treat the words in the policy as mere surplusage and, if at all possible, we construe the policy in a manner that gives effect to all of the policy's language.
>
> We then compare the terms of the policy to the allegations in the underlying complaint. It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured. In determining whether an insurer's duties are triggered, the factual allegations in the underlying complaint are taken as true and liberally construed in favor of the insured. It does not matter if in reality the facts are completely groundless, false or fraudulent. It is the face of the

complaint and not the truth of the facts alleged therein. In addition, an insurer's duty to defend ... is broader than the duty to indemnify. If an insurer does not have a duty to defend, it does not have a duty to indemnify. However, both duties flow from a determination that the complaint triggers coverage.

*Indalex Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 83 A.3d 418, 421 (Pa.Super. 2013) (citations and quotation marks omitted).

An insurance company owes an obligation to defend its insured "whenever the complaint filed by the injured party may potentially come within the policy's coverage." *Id*. at 425. The goal of construction is to ascertain the intentions of the parties as manifested in the terms of the policy and to give effect to language that is clear and unambiguous. *Pa. Nat'l Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1 (Pa. 2014); *401 Fourth Street v. Investors Insurance Co.*, 879 A.2d 166, 170 (Pa. 2005).

Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence. Additionally, [w]e will review the decision of the lower court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. The application of the law, however, is always subject to our review.

*Peters v. Natl. Interstate Ins. Co.*, 108 A.3d 38, 42 (Pa.Super. 2014) (quoting *Erie Ins. Grp. v. Catania*, 95 A.3d 320, 322 (Pa.Super. 2014)).

Preliminarily, we offer the following observations. Erie issued the commercial general liability policy to Little Ducklings, a daycare and preschool located at 7820 Frankford Avenue in Philadelphia. The issue

- 9 -

herein is whether Erie has a duty under the Policy to defend and/or indemnify the Daycare, the Tolsons, the DeLucas, and the Guarantors in the Underlying Case commenced by Landlord for unpaid rent and damages caused by unworkmanlike repairs to another property performed by someone with no ownership interest in the Daycare. The underlying case has nothing to do with childcare or accidents or occurrences on the Daycare premises. Rather, it involves contract and tort claims for allegedly faulty workmanship performed by Mr. DeLuca, the husband of one of the Daycare partners, at the home of Mary T. Neri. Mr. DeLuca, a master carpenter, undertook the renovations pursuant to the Forbearance Agreement to offset the Daycare's rental arrearages.

We are mindful that the reasonable expectations of the parties ultimately guide our construction of the insurance contract. The parties to the insurance contract could not have reasonably expected that the Policy would provide coverage for damages related to renovations undertaken by the husband of a partner of the Daycare at a site unconnected to the Daycare. Against this backdrop, we address Landlord's issues.[5]

---

[5] Landlord does not challenge the trial court's ruling that Erie had no duty to defend or indemnify the Underlying Defendants on the breach of contract claims arising from the Lease, Guaranty, and the Forbearance Agreement. We would also note that relief sought in the nature of unpaid rent does not fall within the coverage of the Policy.

First, Landlord challenges the trial court's ability to grant summary judgment in favor of Erie. He contends that the trial court conclusively rejected Erie's coverage position when it overruled Erie's preliminary objections to Landlord's new matter, and that the trial court was bound by its earlier decision that the underlying claims did not trigger coverage. Appellant's brief at 23. Although Landlord concedes a motion for summary judgment is not limited to the pleadings, as is the case with preliminary objections, he maintains the coverage issue was "settled" at the preliminary objection stage since there was no discovery conducted and the record was not supplemented with admissions or affidavits.

Erie characterizes Landlord's argument as one implicitly invoking the coordinate jurisdiction rule as a bar to the court reexamining an issue, and contends that the argument is meritless for five reasons. First, Erie maintains that the argument is waived since Landlord did not raise the rule in opposition to summary judgment. Pa.R.A.P. 302(a). Erie also directs our attention to *Meyer-Chatfield Corp. v. Bank Fin. Servs. Group*, 143 A.3d 930, 938 n.4 (Pa.Super. 2016), where this Court held that hinting at such an argument in a motion for reconsideration is insufficient to preserve the issue for appeal.

Second, Erie points out that the preliminary objections were limited to Landlord's assertions of bad faith that were pleaded as new matter, not to the underlying issue of coverage. Third, Erie relies upon *Salerno v. Phila.*

- 11 -

***Newspapers, Inc.***, 546 A.2d 1168, 1170 (Pa.Super. 1988), in support of its contention that the coordinate jurisdiction rule is inapplicable where, as here, the same judge ruled on both the preliminary objections and the summary judgment motion. Fourth, Erie argues the rule does not apply between orders overruling preliminary objections and orders granting summary judgment, even when the record is unchanged. ***K.H. v. Kumar***, 122 A.3d 1080, 1092 (Pa.Super. 2015). Finally, Erie contends that the trial court erred when it overruled its preliminary objections. Landlord, in response, disavows any reliance upon the coordinate jurisdiction rule, but offers no legal authority or factual support for his contention that the earlier decision overruling preliminary objections to new matter alleging bad faith was conclusive of the issue of whether coverage was triggered at the summary judgment stage.

We agree with Erie that the coordinate jurisdiction rule does not operate on the facts herein to preclude the same trial court from re-visiting an issue addressed by its earlier ruling. Furthermore, the preliminary objections were directed at Landlord's standing and allegations that Erie was acting in bad faith that could bar Erie's claims "in whole or in part," and coverage was not implicated. Hence, we find no merit in Landlord's claim that summary judgment was foreclosed based on the earlier disposition of preliminary objections to new matter.

Next, Landlord contends that it was "clear error" for the trial court to conclude that Mr. DeLuca was an insured under the Policy.[6] He argues that, assuming *arguendo* that the Daycare was an LLC as he pled, the spouses of members of an LLC would not be insureds. Furthermore, he posits that if the Daycare was insured as a partnership, as suggested by the declarations, the spouses of partners were not insureds unless the claim arose from the conduct of the daycare business. Landlord points out that even the Daycare rejected the latter position.

At first blush, Landlord appears to be suggesting that Mr. DeLuca was not an insured under either scenario and that the trial court erred in so

_____

[6] Landlord pled that Little Ducklings was an LLC. The Erie Policy provides:

1. If you are designated in the Declarations as

> a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
>
> b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.
>
> c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

Erie Policy, Section II 1., at 7.

finding. We are puzzled by Landlord's position because the trial court's finding that Mr. DeLuca was an insured under the Policy appeared to be a favorable one, and Landlord failed to explain how he was aggrieved by the ruling. However, Landlord then hypothesizes that Mr. DeLuca might be an insured under the Policy as a "volunteer."[7] We glean from Landlord's statement of the issue, together with his meandering argument, that his real contention is that Mr. DeLuca's status presented a genuine issue of material fact that precluded the grant of summary judgment.

Landlord offers no support for the proposition that Mr. DeLuca's status presents an issue of fact rather than law. Furthermore, Landlord fails to offer any discussion or analysis as to how coverage was affected by Mr. DeLuca's status. Since Landlord did not develop his argument on this issue, it is waived. **See Karn v. Quick & Reilly, Inc.**, 912 A.2d 329, 336 (Pa.Super. 2006) ("[A]rguments which are not appropriately developed are waived").

In his third issue, Landlord alleges that the trial court erred in concluding that the property damage to the Neri residence was not covered

---

[7] Assuming Mr. DeLuca was a volunteer worker as Landlord pled in the Underlying Case, he would only be an insured "while performing duties related to the conduct of [the insured's] business." Erie Policy, Section II 2(a). Furthermore, a volunteer would not be insured for property damage to property "over which physical control is being exercised for any purpose by you, any of your 'employees,' **volunteer workers** . . ." **Id**. at 2 (2)(b).

because it was damage to the insured's "work product." He contends that the Daycare's work product consisted of operation of a daycare and preschool, and that the damage to the property of another was covered. Landlord's corresponding argument in his brief, however, is devoted to the Policy's language regarding property damage for which an insured has assumed liability in an insured contract, which is implicated in his fourth, fifth, and sixth issues. We find Landlord's third issue waived as stated. To the extent it is subsumed in the other issues, we will address it in that context.

Landlord acknowledges that the Policy does not generally provide coverage for breaches of contract. However, he argues that the exclusion for breach of contract does not apply to liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract,'" and contends that the Forbearance Agreement is such a contract. An insured contract is defined as "That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." Erie Policy, Section V. Definitions, 9f., at 11. Landlord relies upon this provision as providing for coverage for his intentional tort claims of conversion, conspiracy, bad faith and breach of the covenant of good faith and fair dealing, and fraud and deceit.

Landlord alleges that the parties to the insurance contract reasonably would have expected that there would be insured contracts such as the Forbearance Agreement, and that Erie agreed to defend and indemnify such claims. He argues further that the Forbearance Agreement pertains to "[the named insured's] business," and contains language whereby the named insured assumes the liability of another. Landlord construes the Forbearance Agreement as an agreement by the Daycare to indemnify and hold Landlord harmless from DeLuca's damage to property, and he urges us to give effect to the intent of the parties as indicated by the clear language of the Forbearance Agreement.

Erie counters first that policy exclusions and exceptions are irrelevant if no occurrence is alleged, as was the case herein. In other words, unless there is ostensible coverage, Erie would not have us reach the exclusions and exceptions. Second, Erie argues that the Forbearance Agreement was not an insured contract. An "insured contract," according to Erie, is a defend-and-hold–harmless provision. In order to fall within the definition, the named insured, *i.e.*, the Daycare, would have had to agree to assume the tort liability of DeLuca, and the Forbearance Agreement contains no such agreement. Furthermore, Erie contends that even an insured contract provision would not apply to the claims made by Landlord against the Daycare, the DeLucas, the Tolsons, or the Hatzolds, but only to claims of

third parties who sued Landlord for damages for personal injury or property damage due to DeLuca's negligent workmanship.

The unambiguous language of the Policy supports Erie's interpretation of an insured contract. In the September 1, 2011 Forbearance Agreement between Landlord, Tenant, Guarantors, and Michael DeLuca, Landlord agreed to forbear from exercising his rights and remedies for default of the Lease in return for home improvements to be performed by Michael DeLuca at the home of Mary T. Neri. The home improvements were characterized as an alternate manner and mode of paying the rental arrearages due under the Lease. Forbearance Agreement, Article 2.3. The Forbearance Agreement provided further that, upon the termination or expiration of the forbearance period, "the Landlord may take any enforcement action against [Daycare] and the Guarantors to collect the Rent Arrearages." *Id*. at Article 2.5. Landlord's correspondence to the Daycare and DeLuca dated November 18, 2013, is consistent with that Agreement. Landlord advised its tenant and Mr. DeLuca that they were in default of Article 4 of the Forbearance Agreement, that the Agreement was terminated due to Mr. DeLuca's failure to undertake and finish the improvements and to provide the Landlord with a proper accounting of the $7,100 advanced, and that the rent arrearages were immediately due and payable.

Conspicuously absent in the Forbearance Agreement is any agreement by the Daycare, DeLuca and the Guarantors to assume liability **to Landlord**

for property damage tortiously caused to the Neri residence by DeLuca. The Agreement provides only that the Daycare and Guarantors would indemnify and hold **Landlord and homeowner** harmless in the event the latter were sued for liability arising out of any occurrence in or at the Neri residence or DeLuca's occupancy or use of that residence. The Underlying Defendants agreed to "indemnify, defend, save and hold Landlord and the Homeowner and their respective attorneys, agents and representatives, harmless against and from all suits, actions, liabilities . . . arising out of any occurrence in or at the Premises or the occupancy or use by DeLuca of the Premises . . .

> (c) any act, omission or negligence on the part of DeLuca or any of his agents, contractors, servants, employees, licensees or invitees or of any other persons or occupants of the Premises or the public; or

> (d) any failure on the part of DeLuca to keep, observe and perform any of the terms, covenants, agreements, provisions, conditions or limitations contained in this Agreement on DeLuca's part to be kept, observed and performed.

Forbearance Agreement at 3, ¶3.2.

Thus, while there is insured contract language in the Forbearance Agreement, the Underlying Case does not implicate that provision. The Underlying Case does not involve indemnification of Landlord for claims asserted against him or the homeowner by third parties arising out of an occurrence or use of the Neri premises by DeLuca. Furthermore, the inapplicable insured contract provision does not provide coverage for the intentional torts pled. The Policy exclusion for property damage "expected

or intended from the standpoint of the insured" governs and rules out coverage for intentional torts. Policy Section I(2). Thus, there is no merit in Landlord's claim that coverage is supplied under the insured contract provision.

Finally, Landlord alleges that the trial court erred in finding that there was no accident or occurrence pled in the Underlying Complaint that would trigger coverage. Landlord pled that Underlying Defendants "owed Plaintiffs a duty, *inter alia*, to perform the home improvements contemplated thereby in an honest, professional and expeditious manner and without damaging the subject home or property." Underlying Complaint, ¶ 51, at 9. He alleges that the Underlying Defendants allegedly breached the Forbearance Agreement by failing to order and install appropriate windows, account for the $7,100 advance, complete the improvements, and secure a section of patio roof. The latter purportedly resulted in damage to the roof and supporting structures. Landlord incorporated those same allegations in support of his negligence and intentional tort claims against the Underlying Defendants.

The trial court concluded that the pleadings in the Underlying Complaint did not allege an accident to which the policy applies. "Rather, the underlying action alleges facts seeking redress for defendants' breaches of the lease agreement, the guaranty agreement and Forbearance Agreement[,]" and general liability policies do not apply to breach of contract

claims. Trial Court Opinion, 12/5/16, at 7. Specifically, the court determined that the first three counts of the complaint were for breach of contract, not accidental injury, and Erie had no duty to defend or indemnify. As to the negligence claims for Mr. DeLuca's work, the court found that these averments concerned property damage to the work product itself, which was excluded under the terms of the Policy.[8] *Id*. at 8.

Landlord argues first that coverage under the Policy is not limited to accidents. In support thereof, he points to the provision imposing liability for property damage caused by tortious conduct under insured contracts and claims that such an interpretation would nullify the express language of the Policy. He maintains further that negligence can be an "occurrence" under the Erie Policy and Pennsylvania law, and that Mr. DeLuca's negligence, which was neither expected nor intended, constituted an occurrence.[9]

In support thereof, Landlord directs our attention to ***Barber v. Harleysville Mutual Insurance Co.***, 450 A.2d 718 (Pa.Super. 1982),

---

[8] The trial court characterized the allegations of Mr. DeLuca's negligence in the performance of the home improvement work as property damage arising from poor workmanship to the work product itself. The court reasoned that to permit coverage on the facts alleged "would convert Erie's policy into a performance bond" that guaranteed the work, rather than a liability policy intended to insure against accidents. Trial Court Opinion, 12/5/16, at 8. In conclusion, the trial court found that Erie had no duty to defend the insureds against claims of faulty workmanship, and certainly no duty to indemnify.

[9] The Policy excludes coverage for property damage "expected or intended from the standpoint of the insured." Erie Policy, Section I, 2a.

where this Court acknowledged that a counterclaim alleging property damage flowing from insured contractor's breach of a construction contract could be accidental and neither intended or expected, and perhaps be covered under a liability policy. In that case, the insurer was required to defend the counterclaim. In short, Landlord contends that allegations that property damage resulted from Mr. DeLuca's negligent performance of his contractual obligations "could easily involve an accident that DeLuca neither expected nor intended to have occurred." Appellant's brief at 33.

Finally, Landlord assails the trial court's conclusion that the damage to the Neri residence was to the product itself and thus, excluded. Landlord points to the Policy language defining an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Erie Policy, § V, ¶13. Landlord alleges that, although Mr. DeLuca did not perform any improvements to the interior of the Neri residence, that property became "exposed to harmful conditions, resulting in tens of thousands of dollars in damage to the property," namely mold. Complaint, ¶ 52(e).

Erie counters that the Underlying Complaint seeks redress for breach of contract, which is not an "occurrence" that would trigger coverage under the Policy. Erie relies upon *Redev. Authority of Cambria County v. Int'l Ins. Co.*, 685 A.2d 581, 589-90 (Pa.Super. 1996) (*en banc*), where the Authority was sued for breach of contract and negligence in its operation and

improvement of a municipal water system. The Authority sought a defense from its general liability insurer, and the trial court ruled that the insurer had a duty to defend. This Court reversed, finding that despite the negligence allegations in the complaint, the claims were based upon breach of duties imposed under the contract that were not an accident or occurrence contemplated within the policy. We recognized that the purpose of a general liability policy was to protect the insured from liability for accidental injury to person or property, not for breach of contract or breach of warranty.

Erie focuses our attention on the Supreme Court's decision in *Kvaerner*, *supra*, as well as our more recent decisions in *Millers Capital Ins. Co. v. Gambone Bros. Development Co., Inc.*, 941 A.2d 706 (Pa.Super. 2007) and *Erie Insurance Exchange v. Abbott Furnace Co.*, 972 A.2d 1232 (Pa.Super. 2009). This Court held therein that claims of negligence due to faulty workmanship of a contract do not constitute an occurrence. Missing was the "degree of fortuity contemplated by the ordinary definition of 'accident.'" *Kvaerner*, at 899. Erie points out that the definition of occurrence herein is nearly identical to the definition in *Kvaerner*.

Erie's duty to defend and/or indemnify its policyholder against a suit by a third party is based on whether the underlying complaint triggers coverage. *Gambone*, *supra*. The Erie Policy obligates the insurer to "pay those sums that the insured becomes legally obligated to pay as damages

because of . . . 'property damage' to which this insurance applies." Erie Policy, Section I–Coverages 1.a, at 1. The insurance "applies to 'bodily injury' and 'property damage' only if: 1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" **Id**. at 1.b. An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." **Id**. at Section V. Definitions, at 12. Excluded from coverage is damage caused by faulty workmanship to the work product itself. **Id**. at Section I, 2. Exclusions, j.

The declaration sheet of the Erie Policy provides for coverage at "the stated address of the named insured," namely the Daycare and preschool premises. Erie Policy Declarations. It also states that the insurance applies to the premises described in the supplemental declarations, which does not include the Neri residence. The insured operation is listed as a daycare and preschool.

We agree with Erie that Landlord's underlying claims for Mr. DeLuca's failure to complete work and faulty workmanship is a contract dispute at its core. **See Kvaerner**, **supra**. The Forbearance Agreement itself cements that conclusion as it defines home improvements performed by Mr. DeLuca as the "payment of rent arrearages" owing by the LLC and the individual guarantors. Forbearance Agreement, Article 2.3. Notably, Mr. DeLuca's alleged failure to complete the work or perform it in a workmanlike manner

constituted default under the Forbearance Agreement, and upon default, the rent arrearages became due.[10]  The damages alleged to have occurred to the Neri residence were "a direct and proximate result of Defendants' breach of the Forbearance Agreement."  Underlying Complaint, ¶54.  In short, the home improvement work was a contractual undertaking intended to compensate Landlord for unpaid rent.[11]

Nor did Landlord allege facts in the underlying complaint suggesting a "continuous or repeated exposure . . . to harmful conditions."  Contrary to Landlord's representation, he did not plead that mold resulted from any negligent repairs to the Neri home.  ***See e.g. Indalex Inc.***, ***supra*** (where insured's windows and doors were defectively designed and manufactured,

---

[10]  Default was defined as either an occurrence of default under the lease, death or incapacity of Guarantors or DeLuca, or "a) The failure by DeLuca to undertake or finish the Improvements at the Premises as provided for in this Agreement."  Forbearance Agreement Article 4.1(a).  Upon default, the rent arrearages would immediately become due.

[11] Although our courts have not adopted the gist of the action doctrine in the insurance coverage context, it would seem to foreclose Landlord's claims for negligent workmanship and intentional torts herein.  In ***Indalex Inc, v. Nat'l Union Fire Ins. Co.***, 83 A.3d 418 (Pa.Super. 2013) (quoting ***Reardon v. Allegheny College***, 926 A.2d 477, 486 (Pa.Super. 2007), this Court noted that the doctrine forecloses tort claims "(1) arising solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim."

causing water to leak into homes and cause mold, cracked walls, and personal injury, constituted an occurrence).

In addition to the foregoing, Erie reasserts its alternative basis for summary judgment, which the trial court rejected. We find it persuasive and affirm on this basis as well. Landlord pled that the Daycare was an LLC. The Policy declarations identified it as a partnership. Erie contends that, regardless of whether the Policy covered the Daycare as an LLC or a partnership, the Tolsons and DeLucas were not insureds under the Policy for the home improvements at the Neri residence as that was not work associated with the conduct of the Daycare. The trial court disagreed, and concluded that default under the Forbearance Agreement was related to the daycare operation because the Agreement was calculated to "allow the business to remain a going concern." Trial Court Opinion, 12/5/16, at 6. However, the trial court ultimately found no coverage because even if though Mr. DeLuca was an insured, claims of faulty workmanship to the Neri residence were allegations of damage to the insured's work product and excluded from coverage.

We agree with Erie that the home improvements Mr. DeLuca performed were not "the conduct of" the insured Daycare, as that term was used in the Policy. A daycare and preschool provides childcare. The home renovation work performed at the Neri residence by Mr. DeLuca to offset rental arrearages was too attenuated from childcare to make him an insured

under the Policy for that work. This is especially true where the "nature, scope, extent and cost of the Improvements . . . shall be determined by the mutual consent of the Landlord and DeLuca." Forbearance Agreement, Article 2.3, at 2.[12]

Hence, we agree with Erie that it was not obligated to provide a defense to Mr. DeLuca or the rest of the Underlying Defendants for claims that did not involve the operation of the Daycare as a daycare, and we affirm the grant of summary judgment in favor of Erie on this additional basis.

Judgment affirmed.

*Judgment Entered.*

_____

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date:* _9/27/2017_

_____

[12] One could argue that this language in the Forbearance Agreement contemplated a contractual arrangement between Mr. DeLuca and Landlord.